STATE OF NEBRASKA, APPELLEE, v. GEORGE ELLIS NEWTE, APPELLANT.

197 N. W. 2d 403

Filed May 12, 1972. No. 38140.

Frank B. Morrison, Sr., and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Betsy G. Berger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

The appellant was charged and convicted of robbery. At trial, several different versions of the fact situation were disclosed to the jury. The victim of the robbery was a cab driver who testified as follows: At an early morning hour on November 27, 1970, two men entered the driver's cab while it sat in front of a bus depot in Omaha. The cab driver had been noticing a white car with a dented fender as it circled the block before the two men entered the cab. The driver proceeded to a destination requested by his passengers. Upon arrival, one of the passengers, identified by the driver as the defendant, put a dull object to the back of his neck while the other passenger jumped over the front seat and took the driver's money, glasses, and wristwatch. Both men then fled on foot and the driver made an attempt to follow. While attempting to follow the men and then moments later when the police were on the scene, the white car with a dented fender was again noticed by the cab driver.

Police officers testified that they stopped the white car pointed out to them by the cab driver and they searched the occupants. One of the occupants, Ronald Chatman, was carrying a number of small bills and a wristwatch that matched the cab driver's description. The defendant, George Newte, was not in the car. After the occupants were arrested, one of them informed police that the defendant Newte had also been involved in the robbery. Later police arrested Newte and took a statement from him. The statement, read to the jury,

was essentially Newte's denial that he had ever entered the cab or participated in the robbery. Ronald Chatman testified for the defense and contradicted elements of Newte's written statement. Chatman said that Newte did enter the cab with him but did not want to rob the driver. According to Chatman, Newte got out of the cab before the driver was robbed. Newte took the stand at trial, said his written statement did not contain the true facts, and testified to facts which were nearly identical to those given in Chatman's testimony. The State then called a rebuttal witness who had interviewed Chatman previously and another version of the robbery was presented. Chatman had told this witness that his recollection of the facts of the robbery was poor due to intoxication, but he did remember taking the watch from the cab driver's wrist and Newte giving him some of the cab driver's money.

Although the briefs contain much able and refined discussion of the theory and problems involved in the examination of a character witness in a criminal case, the essential question in this case boils down to whether a character witness produced by the defendant in a criminal prosecution may be cross-examined as to an arrest of the defendant whether or not it culminated in a prior conviction. It is clear from the statement of facts heretofore given that there were several versions of the alleged robbery before the jury and, consequently, that the veracity of the witnesses was in question. The defense itself called a state parole officer under whose supervision the defendant had been while on parole from a previous offense. This witness testified that he knew the defendant's reputation for truth and veracity, and after further foundation testified that he would believe the defendant under oath. As a part of his foundation testimony, the parole officer stated that his opinion of the defendant's testimony was based in part upon contact with men who had known the defendant while at the reformatory.

On cross-examination by the prosecutor, the court sustained several objections to questions, the target of which were prior arrests or charges made against the defendant. It appears that the court not only sustained the objections but directed the jury and advised it to disregard the questions themselves, even though there was no answer in the record. The pertinent part of the testimony admitted by the court and under attack in this case is as follows: "Q. (Mr. Brown) Do you know—

"Mr. Schirber: Your Honor, I also object, it should be if he has any convictions only.

"Mr. Brown: I think arrests would have to do with his reputation also, your Honor.

"The Court: He can answer. Do you understand the question?

"The Witness: I'm—I don't.

"The Court: Let me suggest, Mr. Brown, that you rephrase the question. I think it was changed perhaps in the middle and I doubt whether it would be helpful to have it read back.

"Q. (Mr. Brown) Do you know whether or not Mr. Newte, the Defendant here, has had any arrests or convictions since his parole from the Nebraska Penal and Correctional Complex?

"Mr. Schirber: Same objection.

"The Court: Overruled. He may answer.

"The Witness: Sir, I don't. Mr. Newte has been discharged. I don't have his file.

"Q. (Mr. Brown) Well, I am asking you about whether you know or not.

"A. No, sir, I do not."

At the outset, we observe that a line of inquiry directed towards the defendant's previous character is firmly forbidden the State on direct examination. On the other hand, a defendant may adduce affirmative testimony that the general estimate of his character is so favorable the jury may infer he would not be

likely to commit the offense charged. However, "When the defendant elects to initiate a character inquiry, another anomalous rule comes into play. Not only is he permitted to call witnesses to testify from hearsay, but indeed such a witness is not allowed to base his testimony on anything but hearsay." Michelson v. United States, 335 U. S. 469, 69 S. Ct. 213, 93 L. Ed. 168. As the decisions have noted, the courts, in ruling on the admissibility of hearsay testimony in this area are called upon to rule in an illogical and anomalous situation. The question arises as to the latitude of the prosecutor's inquiry into the hearsay basis and foundation. The rule properly to be deduced from the decisions all over the United States in this area is that the trial judge is vested with a broad discretion to properly circumscribe inquiry into a criminal defendant's past conduct when that subject is raised during the cross-examination of a defense character witness. Basye v. State, 45 Neb. 261, 63 N. W. 811; Michelson v. United States, *supra;* 3A Wigmore on Evidence (Chadbourn Rev., 1970), § 988, p. 912. The rule is well settled in this state. As early as Basye v. State, *supra,* this court said as follows: "While particular facts are inadmissible in evidence upon direct examination for the purpose of sustaining or overthrowing character, yet this doctrine does not extend to cross-examination. It is firmly settled by the adjudications in this country that upon cross-examination of a witness who has testified to general reputation questions may be propounded for the purpose of eliciting the source of the witness' information, and particular facts may be called to his attention, and asked whether he ever heard them. This is permissible not for the purpose of establishing the truth of such facts, but to test the witness' credibility, and to enable the jury to ascertain the weight to be given to his testimony. *The extent of the cross-examination of a witness must be left to the discretion of the trial court.* The questions

put to the several witnesses were within the scope of a legitimate cross-examination, and there was *no abuse of discretion in permitting them to be answered."* (Emphasis supplied.)

The precise question, of course, presented by the defendant's brief is whether a cross-examination as to a previous arrest or some other offense is permissible within the latitude of legitimate cross-examination. Following the overwhelming weight of authority (see Annotation, 47 A. L. R. 2d 1258) the Supreme Court of the United States has consistently followed and adhered to the rule announced in Michelson v. United States, *supra,* by stating categorically that "a character witness may be cross-examined as to an arrest whether or not it culminated in a conviction, according to the overwhelming weight of authority." See, also, Mannix v. United States, 140 F. 2d 250; Josey v. United States, 135 F. 2d 809; Spalitto v. United States, 39 F. 2d 782. It is true that the Michelson opinion, around which so much of the argument centers in the briefs in this case, contains a considerable discussion by way of dicta of the theory, difficulties, problems, and suggested procedures for judges to follow in solving the problem. However, it appears abundantly clear in the Michelson case, in a situation directly in point with the case at bar, that such evidence is permissible, rests within a wide and broad discretion of the trial court under all circumstances, and will not be reversed or set aside unless there is a clear abuse of the discretion. After a discussion and a suggested approval of some of the procedures that have been followed by some of the courts, that court concluded with this clear holding which is decisive of the case at bar: "The present suggestion is that we adopt for all federal courts a new rule as to cross-examination about prior arrest, adhered to by the courts of only one state and rejected elsewhere. The confusion and error it would engender would seem too heavy a price to pay *for an almost im-*

*perceptible logical improvement, if any, in a system which is justified,* if at all, by accumulated judicial experience rather than abstract logic.

"The judgment is affirmed." (Emphasis supplied.)

We further feel that when we are dealing with the limitation of cross-examination in such a broad and vague field, it would be unwise for this court to formulate any rigid rule for the exclusion of evidence of previous arrests. As Mr. Justice Frankfurter stated in the concurring opinion in Michelson v. United States, *supra,* it would be unwise to deny trial courts a power to control, under all of the circumstances, the allowable scope of cross-examination in such an admittedly broad area, precipitated by the granting to a defendant in a criminal case of a right which is impermissible under all other evidentiary standards for which there is no logical rationale.

In a more precise examination of the question of alleged abuse of discretion by the trial court, we observe that the trial court did sustain every objection directed at a question mentioning a prior arrest for auto theft. Although as we have pointed out, this was not necessary under the principles announced in Michelson and Basye, nevertheless the defendant had the benefit of these rulings and an admonition by the trial court to disregard such questions. Second, we observe that the question complained of by the defendant was answered in the negative and there was no affirmative evidence in the record of the arrest to which the question was directed. Third, and more important, the jury already knew from the voluntary, direct examination of the defendant himself that he had been previously arrested and convicted of a crime. Surely, alluding to another subsequent arrest on cross-examination would not bring into play any prejudice which should limit legitimate cross-examination of a character witness. In examining the record in this case we are unable to find that the prosecutor's questions fell within

the inhibition of "asking a groundless question in order to waft an unwarranted innuendo into the jury box." We further observe that the defendant at no time objected to the form of the question asked by the prosecutor on cross-examination, but rather based his objection upon the contention that the question would have to be targeted at prior convictions rather than prior arrests. The contention that a calculated innuendo of prior guilt against a previously innocent defendant was wafted into the jury box is without merit in this case.

The above conclusions are reinforced in the record by the fact that the defendant himself admitted he violated the terms of his parole which forbad association with criminal confederates, and which he violated by being in their company at the time of the commission of the robbery involved.

In this case, two men, the witness Chatman and the defendant, got into a taxicab in the middle of the night in Omaha. The cab driver positively identified the defendant as one of the men; the defendant admitted being in the cab at the time; and Chatman too admitted being in the cab at the time. Although these last two witnesses attempted to change their testimony the evidence is convincing that Chatman, prior to the time of the trial, stated he was in the cab and he remembered taking the watch from the cab driver's wrist and that the defendant gave him some of the cab driver's money.

Considering the evidence and the testimony in the case and the elusive nature of the argued contention of prejudice from the admission of the testimony of the previous arrest, we think the following rule is applicable: "No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if this

court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred." State v. Sharp, 184 Neb. 411, 168 N. W. 2d 267.

The judgment and sentence of the district court are correct and are affirmed.

AFFIRMED.