STATE OF NEBRASKA, APPELLEE, V. LEROY CASADOS,
APPELLANT.
STATE OF NEBRASKA, APPELLEE V. JOHN T. ARBUCKLE,
APPELLANT.

225 N. W. 2d 267

Filed January 23, 1975.   Nos. 39321, 39435.

Charles F. Fitzke and James T. Hansen, for appellants.

Clarence A. H. Meyer, Attorney General, Ralph H. Gillan, and Terry R. Schaaf, for appellee.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ., and BLUE, District Judge.

NEWTON, J.

John T. Arbuckle and Leroy Casados were each charged with possession of concealed weapons and of a combination of parts intended for use in converting a device into a destructive device, to wit:   a Molotov cocktail.   Casados was acquitted of the concealed weapon charge but convicted on the destructive device charge.

Arbuckle was convicted on both counts. The items constituting the combination of parts for a destructive device consisted of candles, rope, pieces of cloth, gallon jugs, and gasoline found in the Casados automobile. We find the evidence sufficient to sustain the convictions but reverse both on other grounds.

In the trial of the defendant Arbuckle, the defense called several witnesses who testified that his general reputation was good; his reputation for truth and veracity was good; and his reputation as a law-abiding person was good. In cross-examining these witnesses, the county attorney asked them if they knew or had heard of his conviction in a federal court of making false and fictitious statements to purchase firearms, and on three other felony charges, or of his arrest in Lancaster County, Nebraska, on charges of assault with a deadly weapon, and being a felon in possession of a firearm.

It is the general rule that a defendant's character witness may, on cross-examination, be asked if he has heard that the defendant has been previously convicted or arrested for other crimes. See, Annotation, 47 A. L. R. 2d at 1297; State v. Newte, 188 Neb. 412, 197 N. W. 2d 403; Michelson v. United States, 335 U. S. 469, 69 S. Ct. 213, 93 L. Ed. 168. It is likewise the general rule that such misconduct must have occurred prior to, and not after, the commission of the crime charged. See, Annotation, 47 A. L. R. 2d at 1301; II Whartons Criminal Evidence (13th Ed.), § 426, p. 327. The scope of the cross-examination of a character witness, in the absence of an abuse of discretion, is discretionary with the trial court. See State v. Newte, *supra*. The cross-examination of a character witness as to other misconduct on the part of a defendant is admissible, not to establish the truth of the facts, but to test the credibility of the witness and ascertain the weight to be given to his testimony, and must be made in good faith. See Annotation, 47 A. L. R. 2d at 1274 and 1314. The violation of these

rules in the Arbuckle case was prejudicial and would require its reversal on both counts.

In regard to the charges, in both cases, of unlawful possession of a combination of parts designed or intended for use in creating a destructive device, it appears that the minds of the trial judge and the attorneys were not clear on the question of "intent." The pertinent portion of the statute provides: "(7) * * * (a) Any explosive, incendiary, or poison gas (i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, (vi) booby trap, (vii) Molotov cocktail, or (viii) any similar device, the primary or common purpose of which is to explode and to be used as a weapon against any person or property; or

"(b) Any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subdivision (7) (a) of this section and from which a destructive device may be readily assembled. The term destructive device shall not include any device which is neither designed nor redesigned for use as a weapon to be used against persons or property; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of Section 4684 (2), 4685, or 4686 of Title 10 of the United States Code; or any other device which the State Fire Marshal finds is not likely to be used as a weapon, or is an antique; or any other device possessed under circumstances negating an intent that the device be used as a weapon against any person or property; * * *." § 28-1011.22, R. S. Supp., 1972.

It is evident that simple possession of a completed destructive device designed for use as a weapon is unlawful regardless of intent unless it is one referred to in

section 28-1011.22, subdivision (7) (b), R. S. Supp., 1972, possessed under circumstances negating an intent that it should be used as a weapon. See United States v. Morningstar, 456 F. 2d 278 (4th Cir., 1972).

In the instructions on the elements of the offenses, the court stated: "1. That the defendant * * * did unlawfully have in his possession a destructive device, to-wit: a combination of parts either designed or intended for use in converting any device into a Molotov Cocktail and from which such Molotov Cocktail may be readily assembled." In the present instance the parts referred to were themselves, when not assembled, essentially innocent in nature and obviously not designed as a destructive device. The word "designed" was improperly included. The pertinent part of the statute is that the parts should be intended for assembly and use as a destructive device. The instruction given was confusing and not entirely clear on the issue of intent. Arguments to the jury in the Arbuckle case indicated the attorneys felt that intent was not an element of the charge, and in one instance when the defendant was asked, "Did you intend to use the articles in the van on the night of January 15th, to make a destructive device?" the county attorney objected to the question on the ground "His intent on use is immaterial, not relevant." The objection was sustained. The Nebraska statute is similar to the federal statute. In United States v. Morningstar, *supra,* it is said: "Instead, in subparagraph (3) it defined a second type of illegal materials as a 'combination of parts * * * *intended* for use in converting any device into a destructive device * * *' (Emphasis added) such as a bomb. It is apparent, therefore, that Congress provided that the use for which these materials are intended determines whether they fall within the Act."

In United States v. Posnjak, 457 F. 2d 1110 (2d Cir., 1972), the following was stated with approval: "In United States v. Davis, 313 F. Supp. 710 (D. Conn. 1970) in which the defendant was found with bottles, rags,

and a can of gasoline, the question of whether he intended to convert these components into a Molotov cocktail, a crude but well-known variety of incendiary bomb, was a central issue."

The jury should have been instructed in each case that intent is a material element of the offense charged and that before a verdict of guilty could be returned, it was necessary for the State to prove beyond a reasonable doubt that the defendant intended to convert the various items found in his possession into a destructive device. A showing as to where and when the destructive device was to be used is not essential. The failure to clarify the issue of intent was prejudicial.

There are other assignments of error submitted but we find them to be without merit.

The judgment of conviction is reversed in each of these cases and they are remanded for new trials.

REVERSED AND REMANDED FOR NEW TRIALS.

WHITE, C. J., took no part in the consideration or decision in these cases.

McCOWN, J., concurring.

The jury in each of these cases was instructed under the language of section 28-1011.24(13), R. S. Supp., 1972, that: "The presence in a vehicle other than a public conveyance of any * * * destructive device shall be prima facie evidence that it is in the possession of all persons occupying such vehicle at the time such * * * destructive device is found, * * *."

The defendants have contended that the statute is constitutionally defective because it creates a presumption which shifts the burden of proof to the defendant on the issue of possession, and that there is no rational connection between the fact proved and the fact presumed. The contention is that the mere fact that the defendant was an occupant of the vehicle provides an irrational and wholly arbitrary foundation and connection upon which to base the presumption that all occupants are in possession of any destructive device found in the vehicle.

If we were to hold that "any combination of parts" consisting of otherwise lawful and innocent items which could be converted or assembled into a destructive device was a "destructive device" without proof of an intent to use such parts by converting or assembling them into a destructive device, the defendant's argument as to constitutional validity might well be unanswerable. Where the individual items which make up the "combination of parts" are each ordinarily and generally designed and intended for lawful and innocent purposes, there is simply no rational basis upon which an individual's presence in a vehicle can justify a presumption that his knowledge and consciousness of the presence of such items is sufficient to give him the knowledge and consciousness of being in possession of a destructive device. A criminal statutory presumption must be regarded as irrational or arbitrary, and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. Leary v. United States, 395 U. S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57. See, also, Turner v. United States, 396 U. S. 398, 90 S. Ct. 642, 24 L. Ed. 2d 610.

We have now held, however, that an intent to use such combination of parts by converting or assembling them into a destructive device is a material element of the crime here. Under that holding and under the statutory definition of destructive device, a combination of otherwise innocent parts is not a destructive device within the meaning of the statutory presumption unless and until it is found that the defendant had an intent to use such combination of parts by converting or assembling them into a destructive device. That requirement of specific intent on the part of the defendant with respect to the particular items involved removes the constitutional infirmity and affords a completely rational and constitutional basis for the statutory presumption as to possession.

The instruction on the presumption as given, however, directed the jury to apply the presumption in the language of the statute. The instruction as given, in effect, instructed the jury that the articles comprising the combination of parts in this case were included in the statutory definition of a destructive device.

In a prosecution for possession of a destructive device involving a combination of otherwise lawful and innocent parts, a finding by the jury of the necessary specific intent is a prerequisite to the application of the presumption of possession under section 28-1011.24(13), R. S. Supp., 1972. The jury should therefore be instructed that if it finds that the defendant had an intent to use the combination of parts by converting or assembling them into a destructive device, then and in that event, the statutory presumption as to possession may be applied.

In the Arbuckle case here the record graphically demonstrates that the cross-examination of the character witnesses was for the purpose of establishing the truth of the facts inquired about rather than to test the witnesses' credibility. As a general rule, evidence of other crimes than that with which the accused is charged is not admissible in a criminal prosecution. Exceptions to that rule must be carefully and conscientiously applied. A criminal defendant should be convicted because the evidence establishes that he is guilty of the offense for which he is being tried, and not because he has been charged or convicted of other independent criminal offenses, nor because he is a "bad man." It is a fundamental concept of our system of criminal justice that an accused, whether guilty or innocent, is entitled to a fair trial. It is not only the duty of the trial court but of the prosecutor as well to see that he gets one.

SPENCER, J., dissenting.

I am in total disagreement with the majority opinion in these two cases. I do not agree that the court abused its discretion in its ruling on objections to the scope of

the cross-examination of character witnesses. I do not agree that the jury was not instructed that intent was a material element of the offense charged. Contrary to the conclusion in the majority opinion, the jury was instructed that intent was a material element of the offense charged in both cases. I further disagree that the instruction given was confusing in any particular.

To properly understand these cases some of the facts should be given. At approximately 8 p.m., on January 15, 1973, a police officer in Alliance observed Casados, who had been under observation, and Arbuckle purchasing gasoline for a 5-gallon gasoline container. Approximately 30 minutes later the Alliance police learned that a school in Scottsbluff had been firebombed. They then communicated the information on the purchase of the gasoline by the defendants to the Scottsbluff authorities. About 9:40 p.m., the same officer observed the parties in Casados' Volkswagen van leave Alliance on the highway leading to Scottsbluff. The Scottsbluff authorities were notified. The van was stopped after it entered the Scottsbluff city limits.

While one of the officers was checking Casados' license and vehicle registration, another officer observed the butt end of a pearl-handled pistol sticking out of a bag in the rear of the van. The defendant Casados and his passengers, who were members of the American Indian Movement, were arrested. A search of the van at the scene of the arrest, in addition to the pistol observed in the bag, revealed two other weapons; ammunition holders for the two automatic weapons; a leather shoulder strap holster; a poker with a taped handle; a 5-gallon gasoline can; four empty gallon jugs; a 50-foot length of clothesline rope; and some items that appeared to be marijuana. Search of the occupants produced several diaper-type cloth strip sections which were observed hanging from the pockets of three of them, one of whom was Arbuckle. A knife was strapped to the side of one

of the occupants, and a small box of candles was taken from defendant Casados' left front shirt pocket.

An explosives enforcement officer of the Bureau of Alcohol, Tobacco, and Firearms of the United States Treasury Department was called as an expert witness. He testified that the jugs, gasoline, diaper strips, rope, and candles were a combination of parts from which a destructive device could readily be assembled. He also testified that the components were all that were required to form such destructive device and in combination they only could be used to cause damage or destruction. There was no other purpose for which they could be used as a unit.

I agree, intent is irrelevant when an assembled device falls within subdivision (7) (a) of section 28-1011.22, R. S. Supp., 1972. As set out in United States v. Tankersley (1974), 492 F. 2d 962, intent is irrelevant: "* * * when an assembled device falls 'within (1) or (2),' because: the parts are clearly 'designed' to convert the device into a destructive device. When it is equally clear that the end product does not fall within one of those categories, the same is true. When, however, the components are capable of conversion into both such a device and another object not covered by the statute, intention to convert the components into the 'destructive device' may be important." Here, however, the components were not capable of conversion into any object except a destructive device, as the testimony set out above clearly indicates.

I have difficulty with the statement in the majority opinion that the word "designed" was improperly included in the instruction. In the first place, the instruction said designed or intended. To me, the parts in combination are designed to create a destructive device. The record is clear that while the items in defendants' possession had social utility individually, they had none in combination. The majority opinion quotes from United States v. Posnjak (2d Cir., 1972), 457 F. 2d 1110. The

following from that case is instructive: "One source of confusion which possibly misled the trial court in this case is the use of 'intended' in the phrase in subparagraph (3), 'any combination of parts designed or intended for use in converting any device into a destructive device * * *.' It appears that in some instances this intention to convert a device into an article listed in the statute will be relevant. When it is clear that the assembled device created by combining the components falls within (1) or (2), intent is irrelevant, *for the parts are clearly 'designed' to* convert the device into a destructive device." (Italics supplied.)

Here, the parts in combination could be converted into a destructive device and nothing else. Consequently, as the term is used in the statute, they could be clearly designed for that purpose. It is obvious to me that the parts found in the possession of the defendants were both designed and intended to create a Molotov cocktail, which is covered by our statute. The words of the statute given in the instructions herein are designed *or* intended. A Molotov cocktail has one purpose, and one purpose only: Use as a destructive device against person or property.

The following observation from United States v. Ross (5th Cir., 1972), 458 F. 2d 1144, is instructive: "A Molotov cocktail has no purpose apart from criminal activities. It is not a device that is commonly created for legitimate purposes but the use of which may be perverted from that intended, ordinary purpose to an illegitimate end."

Instruction No. 10 in both cases itemized the material elements which it was necessary for the State to prove beyond a reasonable doubt. Those instructions read: "The material elements which the state must prove by evidence beyond a reasonable doubt in order to convict the defendant of the crime charged in Count II are:
"Count II
"1. That the defendant * * * did unlawfully have in

his possession a destructive device, to-wit, a combination of parts either designed *or* intended for use in converting any device into a Molotov Cocktail and from which such Molotov Cocktail may be readily assembled.

"2.   That he did so on January 15, 1973.

"3.   That he did so in Scotts Bluff County, Nebraska.

"The state has the burden of proving beyond a reasonable doubt *each and every one of the foregoing material elements* necessary for conviction.

"If you find from the evidence beyond a reasonable doubt that each of the foregoing material elements is true, it is your duty to find the defendant guilty.   On the other hand, if you find the state has failed to prove beyond a reasonable doubt any one or more of the foregoing material elements, it is your duty to find the defendant not guilty.

"The burden of proof is always on the state to prove beyond a reasonable doubt all of the material elements of the crime charged, and this burden never shifts." (Italics supplied.)

Regardless of the understanding of the attorneys involved, the trial court instructed the jury that it could convict the defendants only if they unlawfully had a destructive device in their possession, which destructive device in this instance was the combination of parts *either* designed *or* intended for use in converting any device into a Molotov cocktail, and from which such Molotov cocktail could be readily assembled.   Designed or intended were material elements, and the jury was required to find one or the other in order to convict the defendants.

The majority opinion does not specify the basis on which it predicates its ruling that the cross-examination of defendant Arbuckle's character witnesses was prejudicial.   If, as I assume, it is relying on the general rule that such misconduct must have occurred prior to and not after the commission of the crime, it is not error in this case.   The defendant Arbuckle's direct examination

of the character witnesses was not so limited. As Arbuckle concedes in his brief: "Usually it is not permissible to cross-examine as to acts committed after the date of the crime charged, but when the defendant's evidence, as in the instant case, is not confined to the reputation prior to the date of the alleged offense but rather is intended to cover the whole period of acquaintance up to the time of trial, it would appear the State would not be restricted and should be allowed to cross-examine as to the same span of time." This is an exception to the rule relied on by the majority and is clearly applicable in this case, because the defendant Arbuckle intentionally covered the period with his witnesses between the commission of the offense and the time of the trial. Consequently, it could not be prejudicial.

This case is clearly within the ambit of State v. Newte (1972), 188 Neb. 412, 197 N. W. 2d 403, in which we said: " 'While particular facts are inadmissible in evidence upon direct examination for the purpose of sustaining or overthrowing character, yet this doctrine does not extend to cross-examination. It is firmly settled by the adjudications in this country that upon cross-examination of a witness who has testified to general reputation questions may be propounded for the purpose of eliciting the source of the witness' information and particular facts may be called to his attention, and asked whether he ever heard them. This is permissible not for the purpose of establishing the truth of such facts, but to test the witness' credibility, and to enable the jury to ascertain the weight to be given to his testimony. *The extent of the cross-examination of a witness must be left to the discretion of the trial court.* The questions put to the several witnesses were within the scope of a legitimate cross-examination, and there was *no abuse of discretion in permitting them to be answered.*' (Emphasis supplied.)"

The concurring opinion of Judge McCown, in an attempt to bolster the majority opinion, suggests that de-

fendants' constitutional argument may be unanswerable, and cites Leary v. United States, 395 U. S. 6, 89 S. Ct. 1532, 23 L. Ed. 2d 57, and Turner v. United States, 396 U. S. 398, 90 S. Ct. 642, 24 L. Ed. 2d 610. These cases are reviewed in the later case of Barnes v. United States (1973), 412 U. S. 837, 93 S. Ct. 2357, 37 L. Ed. 2d 380.

In Barnes, the federal district court jury had been instructed that possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which one may reasonably draw the inference and find in the light of surrounding circumstances shown that the person in possession knew the property had been stolen. The Barnes court, in an opinion by Mr. Justice Powell, held the instruction comports with due process in the following language: "The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possession consistent with innocence. On the basis of this evidence alone common sense and experience tells us that petitioner must have known or been aware of the high probability that the checks were stolen. Cf. Turner v. United States, 396 U. S., at 417; Leary v. United States, 395 U. S., at 46. Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. Since the inference thus satisfies the reasonable-doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements of due process."

I find no prejudicial error in either case, and believe that the judgments in each should be affirmed.

BOSLAUGH, J., concurring.

I concur generally in the opinions of Judge Newton and Judge McCown.

Intent is an element of the offense only where the defendant is charged with unlawful possession of a combination of parts intended for use in creating a destruc-

tive device. Where the statutory presumption is relied on the jury should be instructed that the evidence must show the defendant intended to use the parts to create a destructive device or knew that some other party present in the vehicle had such an intent.

In the Arbuckle case the cross-examination of the character witnesses went beyond an inquiry to test the credibility of the witnesses and ascertain the weight or value to be given to their testimony.

CLINTON, and BRODKEY, JJ., join in this concurrence.