### UNITED STATES of America
### v.
### Leon DAVIS.
### Crim. No. 12626.

United States District Court, D. Connecticut.

June 1, 1970.

Richard P. Crane, Jr., Asst. U. S. Atty., New Haven, Conn., for the United States.

Howard A. Jacobs, and M. Mitchell Morse, of Jacobs, Jacobs, Grudberg & Clifford, New Haven, Conn., for defendant.

TIMBERS, Chief Judge.

Defendant has been charged in a two count indictment, returned in this District on October 28, 1969, with violations of the National Firearms Act[1] in that he received and possessed a firearm not registered to him, in violation of 26 U.S.C. § 5861(d) (Supp. IV, 1965–68), and he received and possessed a firearm not identified by a serial number, in violation of 26 U.S.C. § 5861(i) (Supp. IV, 1965–68).

---

1. 26 U.S.C. §§ 5801–72 (Supp. IV, 1965–68), as amended by the Gun Control Act of 1968, Pub.L. 90–618, 82 Stat. 1234, effective November 1, 1968. See 1968 U.S.Code Cong. & Adm.News, pp. 4410–35.

Defendant moves to dismiss the indictment on the grounds (1) that the registration requirements of the Act are unconstitutional in that they violate his privilege against self-incrimination, and (2) that the registration and identification requirements of the Act are not applicable because he did not possess a firearm, defined as a "destructive device", within the meaning of the Act.

For the reasons stated below, the Court denies defendant's motion to dismiss on both grounds.

## FACTS

For the purpose of the instant motion, the following facts, as they appear in the papers before the Court, are taken as true.

Defendant was arrested on October 21, 1969, at 9 P.M., in a common hallway on the premises at 150 Newhall Street, New Haven. At the time of arrest, defendant had in his possession four empty bottles, a number of cloth strips and a two gallon can of gasoline.

After being advised of his rights and after signing a waiver, he gave a statement to members of the Detective Division of the New Haven Police Department admitting that it was his intention, with others, to use the materials in his possession at the time of arrest to make "fire bombs" and "Molotov cocktails" in order "to bomb Olin Mathieson, Inc. and some warehouses."

## CLAIM THAT REGISTRATION REQUIREMENTS OF ACT ARE UNCONSTITUTIONAL

Defendant moves to dismiss on the ground that the registration requirements of the Act violate his privilege against self-incrimination under the Fifth and Fourteenth Amendments. He in effect asserts that, to avoid prosecution under Section 5861(d) for receipt or possession of a firearm not registered to him and prosecution under Section 5861(i) for receipt or possession of a firearm not identified by a serial number, he must comply with the registration provisions of the Act which require him to divulge incriminating information.

In support of his position, defendant relies upon Haynes v. United States, 390 U.S. 85 (1968). At issue there was the validity of Section 5851 of the Act (prior to the 1968 amendment[2]) which provided that it was unlawful for any person to receive or possess a firearm which had been unlawfully made or transferred and that it was unlawful for any person to possess a firearm not registered as required by Section 5841. Defendant in *Haynes* was charged with possession of a firearm not registered under Section 5841. The Court held that the offense under Section 5851 of possession of a firearm not registered as required by Section 5841 did not differ in any significant respect from the offense under Section 5841 of failure to register possession of a firearm. The Court held that registering would have compelled defendant to provide incriminating information, largely because the registration requirement was aimed principally at those who had obtained possession of firearms without complying with the other requirements of the Act, and who therefore were threatened with immediate criminal prosecution under certain provisions of the Act. The Court concluded that " . . . a proper claim of the constitutional privilege against self-incrimination provides a full defense to prosecutions either for failure to register a firearm . . . or for possession of an unregistered firearm. . . ." 390 U.S. at 100.

In response to the Court's decision in *Haynes*, Congress amended the Act in an attempt to overcome the infirmities pointed out in that decision.[3] Defendant in the instant case has been charged with violations of provisions of the amended Act.

2. *Supra* note 1.

3. 1968 U.S.Code Cong. & Adm.News, p. 4435.

*Haynes* suggests that there are two inquiries which must be made with respect to the constitutionality of Sections 5861(d) and 5861(i). The first is whether punishment of a person under Section 5861(d) for receipt or possession of a firearm not registered to him constitutes punishment for his failure to register the firearm and whether punishment of a person under Section 5861(i) for receipt and possession of a firearm not identified by a serial number in effect constitutes punishment for his failure to identify the firearm. If the answer to the first inquiry is in the affirmative, the next inquiry is whether compliance with the registration provisions of Section 5841 and the identification procedures of Section 5842 involves a substantial risk of self-incrimination.

With respect to the first inquiry, Sections 5841 and 5842 dealing with the registration and identification of firearms impose duties on the transferor of a firearm rather than the transferee. Since Section 5861(d) and Section 5861(i) impose penalties on the transferee rather than the transferor (this was done deliberately by Congress to avoid the problem raised by *Haynes*), it follows that punishment for receipt or possession of a firearm not registered to the transferee or not identified with a serial number, under Sections 5861(d) and 5861(i), respectively, does not constitute punishment for failure to register or identify a firearm. There are two decisions which lend support to this position. United States v. Schofer, 69 CR 362 (E.D.N.Y., filed December 15, 1969); United States v. Britton, Crim.No. 69–H–300 (S.D.Tex., filed November 6, 1969).

With respect to the second inquiry, compliance with the amended registration requirements does not involve a substantial risk of self-incrimination in view of the restriction upon the use of registration information imposed by new Section 5848(a):

> "No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence."

■ As defendant correctly points out, Section 5848(a) does not impose a restriction upon the utilization of registration information as evidence in connection with prospective violations; and Marchetti v. United States, 390 U.S. 39, 53 (1968), makes it clear that the self-incrimination privilege is applicable to prospective acts. *Marchetti*, however, holds that the applicability of the privilege depends upon whether "the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." 390 U.S. at 53.

The hazards here involved with respect to the amended registration requirements are not substantial and real. In this regard, it should be noted that the registration challenged in *Haynes* was directed principally at those persons who had obtained possession of a firearm without complying with the other requirements of the Act and who therefore were threatened with immediate criminal prosecution. The registration and identification procedures at issue in the instant case, which are much broader, are not so directed. Thus, in *Haynes* the act of registering would have constituted a direct admission that an unregistered firearm was acquired in violation of the Act. This is not so under the amended registration and identification procedures of the Act.

As the First Circuit stated (in the context of a self-incrimination claim under Sections 5851 and 5814) in Vari-

timos v. United States, 404 F.2d 1030, 1033 (1 Cir. 1968), cert. denied, 395 U.S. 976 (1969):

> "That one has properly started the legal process of qualifying to receive a firearm is no indication that he will subsequently depart from that process."

Moreover, in *Varitimos* the claim was made that:

> "[E]ven though a firearm is acquired lawfully, its acquisition focuses suspicion on the transferee because of the legislative purpose of the Act. Thus, should a transferee subsequently engage in illegal activity involving a firearm, the order form would provide a link in the chain leading to conviction." 404 F.2d at 1034.

The First Circuit rejected this argument:

> "[T]he protection of the Fifth Amendment privilege is inapplicable to prospective acts involving only a speculative and insubstantial hazard of incrimination. . . .

> In *Marchetti* the fact that 49 states prohibited the very activity disclosed by payment of the tax constituted a real hazard of incrimination. But here there is no prohibition, either state or federal, against possession of a firearm lawfully acquired under the National Firearms Act. [Footnote omitted.] Necessarily, a question of incrimination can arise only if a wholly different criminal act is performed at some point in the future. To accept appellant's argument would be tantamount to saying that a pharmacist should not be required to acknowledge receipt of certain drugs since he may secretly intend to distribute them

without a prescription, and would therefore be supplying evidence of receipt which would incriminate him." 404 F.2d at 1034.

The Court of Appeals for the Second Circuit, in its recent decision (in the context of a self-incrimination claim under Section 5821 of the Act) in Desimone v. United States, 423 F.2d 583 (2 Cir. 1970), expressly agreed with the holding of the First Circuit referred to above in *Varitimos*:

> "[W]e agree with the First Circuit that the possibility that appellant or one of his customers may decide to commit a different criminal act in the future is not enough to support the fifth amendment claim."

The Court denies defendant's motion to dismiss the indictment on the ground that the registration requirements of the Act violate his privilege against self-incrimination.[4]

## CLAIM THAT DEFENDANT DID NOT POSSESS A "DESTRUCTIVE DEVICE" WITHIN MEANING OF ACT

 As a second ground of his motion to dismiss the indictment, defendant argues that the requirements of registering and identifying a firearm with a serial number are not applicable here because he did not possess a firearm as defined by the Act. He claims, therefore, that he cannot be charged with receipt or possession of a firearm not registered to him in violation of Section 5861(d) or receipt or possession of a firearm not identified by a serial number in violation of Section 5861(i).

The "firearm" which defendant is charged with having received or possess-

---

4. For other post-*Haynes* decisions rejecting claims of self-incrimination under other sections of the Act, see United States v. Thompson, 420 F.2d 536, 541–44 (3 Cir. 1970) (Sections 5851 and 5821) ; United States v. Benner, 417 F.2d 421, 423 (9 Cir. 1969) (Sections 5851 and 5821) ; Burton v. United States, 414 F.2d 261, 262–63 (5 Cir. 1969) (Sections 5851 and 5821) ; Lewis v. United States, 408 F.2d 1310 (10 Cir. 1969) (Sections 5851 and 5821) ; Mower v. United States, 402 F.2d 982, 985 (8 Cir. 1968) (Sections 5851, 5861, 5812(b)) ; Reed v. United States, 401 F.2d 756, 761–63 (8 Cir. 1968) (Sections 5851 and 5821) ; United States v. Casson, 288 F.Supp. 86 (D.Del.1968) (Sections 5851, 5821, 5811 and 5814) ; United States v. Taylor, 286 F.Supp. 683 (E.D.Wis.1968) (Sections 5851 and 5821).

ed is described in the indictment as "explosive material, more specifically, cloth, gasoline and empty bottles used in the manufacture of certain types of fire bombs". The government claims, based on defendant's statement immediately after his arrest, that he intended to construct a Molotov cocktail from these materials.

Section 5845(a)(8) provides that the term "firearm" as used in the Act includes a "destructive device". The government is proceeding on the theory that the materials defendant possessed at the time of his arrest constituted a "destructive device" as defined by Section 5845 (f):

> "The term 'destructive device' means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, . .
>
> or (F) similar device; . . . and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) . . . and from which a destructive device may be readily assembled. The term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon; . . ."

It is the government's contention that the cloth, gasoline and bottles here involved are a "combination of parts either designed or intended for use in converting any device into a destructive device" as that term is used in Section 5845(f).

Defendant argues that the materials allegedly possessed by him cannot be said to constitute a "combination of parts", since the common dictionary meaning of combination is a union or aggregation, and no such union or aggregation of parts is claimed to have existed in the instant case. He asserts that what he is alleged to have possessed was nothing more than a "collection" of parts. Fur-

ther, he asserts that, if the word combination is so broadly construed as to include the collection of materials he allegedly possessed, the reach of the Act would be overbroad because almost every household has within it a container of flammable material, cloth and empty bottles.

It is true that the common meaning of the term combination is union. The context in which the term "combination" is used in the Act, however, clearly indicates that what Congress meant by the term was an association of the components of a destructive device, at the same time and place, capable of being converted into a destructive device— not an actual union of parts in an assembled device. Defendant's argument that, under such a construction of the term combination, the contents of almost any household would fall within the purview of the Act is without merit, since Section 5845(f) specifically provides that only a *"combination of parts either designed or intended for use in converting any device into a destructive device"* constitutes a destructive device.

In short, defendant's argument rests on a narrow construction of the terms of the Act which ignores the context in which they are used.

The Court denies defendant's motion to dismiss the indictment on the ground that the registration and identification requirements of the Act are not applicable because he did not possess a firearm defined as a "destructive device", within the meaning of the Act. See United States v. Lanchli, 371 F.2d 303, 311–13 (7 Cir. 1966); United States v. Kokin, 365 F.2d 595 (3 Cir.), cert. denied, 385 U.S. 987 (1966).

### ORDER

ORDERED that defendant's motion to dismiss the indictment is denied in all respects.