**UNITED STATES of America,
Appellant,**

v.

**James Patrick MORNINGSTAR,
Appellee.**

**No. 71–1988.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 9, 1972.

Decided March 20, 1972.

Paul C. Camiletti, U. S. Atty. for Northern District of West Virginia, for appellant.

Boyd L. Warner, Clarksburg, W. Va. (Strathers & Cantrall, Clarksburg, W. Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

The United States appeals from an order of the district court which dismissed a multicount indictment that charged James Patrick Morningstar with unlawfully transporting, concealing, and possessing a "firearm, being a destructive device consisting of black powder pellet explosive and blasting caps" in violation of 18 U.S.C. §§ 922(i) and (j) and 26 U.S.C. § 5861(b), (c), and (d).[1] The district court held that these materials were not a destructive device within the meaning of the Omnibus Crime Control and Safe Streets Act and the National Firearms Act, as amended by the Gun Control Act of 1968. We reverse.

The evidence considered by the court on the motion to dismiss the indictment disclosed that the alleged destructive device consisted of four sticks of black

---

1. A "firearm" is defined by statute to include a "destructive device." 18 U.S.C. § 921(a) (3) (D) (1970); 26 U.S.C. § 5845(a) (8) (1970).

powder pellet explosive fastened together with electrical tape and several unattached blasting caps. A hole had been formed in one of the sticks for a blasting cap, but none had been inserted. The sticks and caps were found in a plastic wrapper. The evidence also revealed, although the district judge did not advert to it, that Morningstar had obtained the explosives and caps in Pennsylvania and concealed them on the grounds of a college where he was enrolled in West Virginia.

The Gun Control Act of 1968 [2] amended the National Firearms Act by defining a destructive device in 26 U.S.C. § 5845(f), as follows:

"The term 'destructive device' means (1) any explosive, incendiary . . . (A) bomb, (B) grenade, (C) rocket . . . (D) missile . . . (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile . . . (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon. . . ." [3]

The government contends that the sticks of black powder and the blasting caps constitute a destructive device as defined by 26 U.S.C. § 5845(f) and its counterpart, 18 U.S.C. § 921(a)(4) because they are a combination of parts intended for use as a bomb and from which a bomb may be readily assembled. The defendant asserts that these materials are commercial explosives which Congress did not include in the definition of a destructive device. He argues that the Act applies only to gangster-type weapons and military ordnance.

■ Whether commercial explosives are covered by the Act must be determined, we believe, by the use for which they are intended. This interpretation comports with the plain language of the Act. Section 5845(f), subparagraph (1) deals with explosive and incendiary devices which have no business or industrial utility. [4] They are covered regardless of their intended use. Subparagraph (2) is inapplicable because it refers to weapons. Subparagraph (3) deals with two types of materials "from which a destructive device may be readily assembled." The first type is a "combination of parts . . . *designed* . . . for use in converting any device into a destructive device. . . ." [Emphasis added] such as a bomb. This type includes, for example, the unassembled parts of a military fragmentation or incendiary bomb. Because of their design they are proscribed regardless of how the possessor intends to use them. If Congress had resolved not to include commercial explosives, it could have stopped at this point. Instead, in subparagraph (3) it defined a second type of illegal materials as a "combination of parts . . . *intended* for use in converting any device into a destructive device. . . ." [Emphasis added] such as a bomb. It is apparent, therefore, that Congress provided that the use for which these materials are intended determines whether they fall within the Act. This portion of the definition shows that Congress included more than gangster-

2. Act of October 22, 1968, Pub.L.No. 90–618, 82 Stat. 1213, *amending* 18 U.S.C. §§ 921 et seq. (1970), and 26 U.S.C. § 5801 et seq. (1970).

3. The Gun Control Act of 1968 also amended the Omnibus Crime Control and Safe Streets Act by an essentially similar definition of a destructive device. 18 U.S.C. § 921(a)(4) (1970).

4. Throughout the opinion we have considered the definition of a destructive device in terms of 26 U.S.C. § 5845(f). Our discussion of this section is applicable to the definition contained in 18 U.S.C. § 921(a)(4) since the slight variation in the two statutes is immaterial to the question before us.

type weapons and military ordnance. The plain language of the Act, consequently, establishes that other types of explosives, such as commercial black powder or dynamite, are subject to the Omnibus Crime Control and Safe Streets Act and the National Firearms Act depending on their intended use. This interpretation of the Act accords with Langel v. United States, 451 F.2d 957, 962 (8th Cir. 1971) (dynamite, fuse, and cap); United States v. Oba, 448 F.2d 892, 894 (9th Cir. 1971) (dynamite, fuse, and cap); United States v. Davis, 313 F.Supp. 710, 713 (D.Conn. 1970) (bottles, gasoline, and strips of cloth); and United States v. Harflinger, 436 F.2d 928, 929 n. 1 (8th Cir. 1970) (by implication—dynamite, fuse, cap, wire, clock, and battery).

Since the Gun Control Act of 1968 does not expressly exclude commercial explosives, Morningstar relies on legislative history. In support of his position he cites United States v. Schofer, 310 F.Supp. 1292, 1297 (E.D.N.Y.1970), and Judge Browning's dissent in United States v. Oba, 448 F.2d 892, 895 (9th Cir. 1971). These authorities view the Act as proscribing only gangster-type weapons and military ordnance, which have no legitimate private utility. Undoubtedly, as these opinions demonstrate, Congress intended to control traffic in those items. But the legislative history also suggests that the exclusion of devices made of commercial explosives depends on their intended use. The House Report on the Gun Control Act of 1968 supports this conclusion by stating:

> "As noted under section 921(a) (4), this paragraph excludes certain devices from the definition of 'destructive device.' The devices excluded are those not designed or redesigned or used or intended for use as a weapon —e. g., construction tools using explosives *when used for such purposes.* . . . " [Emphasis added].[5]

We believe the legislative history is not so conclusive on this issue that it shows a congressional intention to restrict the commonly accepted meaning of bombs and weapons to those employed by gangsters or to military ordnance.

Moringstar also argues that since the Organized Crime Control Act of 1970 [6] specifically regulates commercial explosives, Congress had not previously enacted legislation with respect to them. We are not persuaded by this argument. The 1970 Act regulates explosives even though they are intended for legitimate use. Its enactment does not compel the conclusion that Congress previously had not intended to outlaw the illegitimate use of commercial explosives for bombs.

Nor do we find merit in Morningstar's plea that the Gun Control Act of 1968 is too vague to satisfy the requirements of due process. Questions about the Act's definitions arise only when resort is made to legislative history for the purpose of limiting the accepted meaning of simple and well known words. On its face, the definition of a destructive device gives fair notice to a person of ordinary intelligence that it includes any combination of parts intended to be used as a bomb or weapon and from which a bomb or weapon can be readily assembled. *See* United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

We do not view subparagraph (3) of § 5845(f) as simply creating an affirmative defense. On the contrary, at Morningstar's trial the burden will be on the government to prove beyond a reasonable doubt that:

(1) the commercial materials mentioned in the indictment, black powder pellet explosive and blasting caps, could have been readily assembled into a bomb;

(2) Morningstar intended to convert the sticks and caps into a bomb; and

---

5.  H.R.Rep. No. 1577, 90th Cong., 2d Sess. 12 (1968), *reprinted in* 3 U.S. Code Cong. & Admin. News, 4418 (1968).

6.  18 U.S.C. §§ 841–848 (1970).

(3) he dealt with these materials in a manner prohibited by law.

We, therefore, vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

Oakes, Circuit Judge, dissented and filed opinion.