**UNITED STATES of America,**
**Plaintiff,**

v.

**Steven Lee GREER and David**
**Edward Haley, Defendants.**

**No. G–75–94 CR.**

United States District Court,
W. D. Michigan, S. D.

Aug. 12, 1975.

Frank S. Spies, U. S. Atty., by Terrence Dillon, Asst. U. S. Atty., Grand Rapids, Mich., for plaintiff.

Kenneth Mogill, Detroit, Mich., Robert A. Steadman, Traverse City, Mich., for defendants.

MILES, District Judge.

On February 18, 1975, a United Parcel Service employee at Livonia, Michigan found that a package addressed to Greer, with an address for Haley listed as the return address, was undeliverable as the address was found to be non-existent. Then, apparently pursuant to UPS regulations, the employee opened one corner of the package, attempting to find a bill of lading, and found a quantity of Trojan #6 explosive primers. He then called A.T.F. and upon the arrival of an Agent, the employee opened the package fully and inspected the contents, finding an inner package containing fifty Atlas Electric Blasting Caps. There was no search warrant for this inspection, and no mechanism for creating the detonating electrical current was discovered.

In Count I of a two count indictment, both defendants were charged under 18 U.S.C. § 371 with conspiring to knowingly possess an unregistered destructive device in violation of 26 U.S.C. § 5861(d) and § 5871. In Count II, defendant Haley is charged with possession of such an unregistered device, in violation of these same sections. These two sections read as follows:

§ 5861. Prohibited acts

It shall be unlawful for any person

—

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record;

§ 5871. Penalties

Any person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both, and shall become eligible for parole as the Board of Parole shall determine.

This case is presently before the Court on two motions by the defendants. The first is a motion to dismiss made by both defendants. The second is a motion to suppress evidence made by defendant Greer only. Argument on these motions was heard on July 31, 1975, and they were then taken under advisement.

## I. MOTION TO DISMISS

Defendants' primary argument in support of this motion is that the materials found in the box cannot come within the scope of the cited statutes. The instant indictment involves sections of the Gun Control Act of 1968, which amended the National Firearms Act. As is clear from the indictment, defendants were charged with possession of an unregistered "firearm." This term is further defined in 26 U.S.C. § 5845 as follows:

For the purpose of this chapter—

(a) Firearm—The term "firearm" means (1) a shotgun having a barrel or barrels . . (Here follows through subparagraph (7) meticulous description of items of military ordnance and instrumentalities of crime.) . . and (8) a destructive device.

It is the meaning of "destructive device" which forms the focal point of this motion. The definition is contained in 26 U.S.C. § 5845(f):

Destructive device.—The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary or his delegate finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any de-

vice into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10 of the United States Code; or any other device which the Secretary of the Treasury or his delegate finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes.

■ In arguing that the contents of the box are not a "destructive device," defendants first state that the materials here are commercial blasting materials and not expected to be registered under a statute, which makes an objective definition of the term. Thus, according to defendants, the only way they could be included would be on a theory that the intent of the possessor brings materials otherwise excluded into the ambit of the statute. They further emphasize that the definition makes an objective listing of those types of weapons sought to be proscribed, and does not suggest that either the intent of the maker or that of possessor can make otherwise innocent devices unlawful, and that to do so would not only alter the intent of Congress, but would also present grave self-incrimination problems. On this branch of the motion, the government concedes the fact that these are commercial explosive materials, but disputes the premise that the only way to bring these materials into the statute is to consider the in-

tent of the possessor, and that this could contravene the meaning of the statute.

Both parties correctly point out that this language has been the subject of a number of cases, and that the Circuits are split on the question, with the Sixth Circuit not yet having spoken on the subject.[1] The government's interpretation is supported by *U. S. v. Morningstar*, 456 F.2d 278 (4th Cir. 1972), cert. den., 409 U.S. 896, 93 S.Ct. 135, 34 L. Ed.2d 153 (1972); *Langel v. United States*, 451 F.2d 957, 962 (8th Cir. 1971); *United States v. Oba*, 448 F.2d 892, 894 (9th Cir. 1971); *United States v. Davis*, 313 F.Supp. 710, 713 (D.Conn. 1970); *United States v. Harflinger*, 436 F.2d 928, 929 n. 1 (8th Cir. 1970). The petitioner cites the Court to *U. S. v. Posnjak*, 457 F.2d 1110 (2nd Cir. 1972); *United States v. Schofer*, 310 F.Supp. 1292, 1297 (E.D.N.Y.1970), and Judge Browning's dissent in *United States v. Oba*, 448 F.2d 892, 895 (9th Cir. 1971).

These latter cases hold that commercial explosives, such as those involved here, were not intended by Congress to be included within the category of "destructive devices." The *Posnjak* court calls attention to a colloquy between Senators Dodd and Metcalf during the consideration of the Crime Control Act, which contained a very much similar definition of "destructive device."

"Mr. Metcalf: . . . The Senator has included explosive devices under the destructive portions of the Act.

Mr. Dodd: Yes.

Mr. Metcalf: Does that mean that dynamite for mines or construction companies, and so forth, is included?

Mr. Dodd: No, it does not, Senator. What I had in mind was things like hand grenades and other types of mines and bombs.

Mr. Metcalf: Antipersonnel mines.

Mr. Dodd: Yes.

1. See Memorandum Opinion and Order of Judge Damon Keith, denying defendant's motion to dismiss dated August 13, 1974 in *U. S. v. Fachini*, (E.D.Mich), Cr. No. 4–81258. This case is currently on appeal to the Sixth Circuit Court of Appeals (No. 75–1447). However, a perusal of appellant's appeal brief shows that question, while addressed by Judge Keith, was not raised on appeal.

Mr. Metcalf: So that a legitimate prospector—

Mr. Dodd: He is not included under the provisions at all.

Mr. Metcalf: He could get dynamite.

Mr. Dodd: This provision has nothing to do. with that type of business. It specifically excludes such items which would be used in commercial construction or business activities." [114 Cong.Rec. 12448 (1968)]. *Posnjak*, supra, pp. 1115–1116.

The Court concludes that:

The legislative history suggests strongly, then, that Congress was concerned in the National Firearms Act mainly with clearly identifiable weapons which were the cause of increasing violent crime and which had no lawful uses, and that the intent of the user of these weapons was irrelevant, as they were so prone to abuse that they were considered *per se* dangerous and unnecessary for legitimate pursuits. Congress did not mention or deal with possible unlawful uses of otherwise legitimate devices, but concentrated on objectively identifiable weapons of war and "gangster-type weapons." 457 F.2d at 1116.

Similarly, in *Schofer*, supra, the Court found that:

The statute's terms indicate that it was not intended to reach such ordinary commercial materials through "intent" alone. The language implies at minimum the presence of parts "intended" to "convert" any "device" into a destructive device akin to those referred to in § 5845(f)(1) and (2), all of which have definite non-industrial characters. The articles here could be assembled only into the familiar industrial blasting charge; the risk of anti-social use here was not inherent in the articles or in any suitability they had for "conversion" to a non-industrial weapon or "mine," but in the potential perversion of their use. The

potential is rather that of the parked motor vehicle that can be made a lethal weapon by perversion of its purpose. 310 F.Supp. 1297.

In the absence of any directive on this subject from our Court of Appeals, this Court has carefully considered this interpretation and its implications but concludes that it is not persuasive. The analysis of this section advanced by the government impresses the Court as being that which follows more closely the meaning which Congress gave this language. *U. S. v. Morningstar*, supra, is probably the best statement of the position advanced by the government. There, the Fourth Circuit construed Section 5845(f) more expansively than does the Second Circuit:

Whether commercial explosives are covered by the Act .must be determined, we believe, by the use for which they are intended. This interpretation comports with the plain language of the Act. Section 5845(f), subparagraph (1) deals with explosive and incendiary devices which have no business or industrial utility. They are covered regardless of their intended use. Subparagraph (2) is inapplicable because it refers to weapons. Subparagraph (3) deals with two types of materials "from which a destructive device may be readily assembled." The first type is a "combination of parts . . . *designed* . . . for use in converting any device into a destructive device. . . ." [Emphasis added] such as a bomb. This type includes, for example, the unassembled parts of a military fragmentation or incendiary bomb. Because of their design they are proscribed regardless of how the possessor intends to use them. If Congress had resolved not to include commercial explosives, it could have stopped at this point. . Instead, in subparagraph (3) it defined a second type of illegal materials as a "combination of parts . . . *intended* for use in converting any device into a

destructive device. . . ." [Emphasis added] such as a bomb. It is apparent, therefore, that Congress provided that the use for which these materials are intended determines whether they fall within the Act. This portion of the definition shows that Congress included more than gangster-type weapons and military ordnance. The plain language of the Act, consequently, establishes that other types of explosives, such as commercial black powder or dynamite, are subject to the Omnibus Crime Control and Safe Streets Act and the National Firearms Act depending on their intended use. [footnote omitted] 456 F.2d at 280–281.

This view is particularly cogent in light of the legislative history of the Act. In its section by section analysis of the Act, the House Report on the Gun Control Act of 1968 states:

> "As noted under section 921(a)(4), this paragraph excludes certain devices from the definition of 'destructive device.' The devices excluded are those not designed or redesigned or used or *intended* for use as a weapon —e. g., construction tools using explosives *when used for such purposes* . . ." [Emphasis added]. H.R. Rep.No.1577, 90th Cong., 2d Sess. 12 (1968), reprinted in 3 U.S.Code Cong. & Admin.News, p. 4418 (1968).

■ It would thus appear that Congress did not intend to restrict this definition solely to gangster-type weapons or to military ordnance.

■ The second branch of the defendants' argument in support of dismissal is that the wording of subsection (f)(3) speaking of "any combination of parts . . . from which a destructive device may be readily assembled," means that it applies only to situations where *all* the components for a complete working device are involved. Defendants point out that here the motive force for detonation, some electrical device, was not in the package. Defendants

again rely on *Posnjak,* supra, and on *U. S. v. Davis,* supra.

The government responds that the energy source here is not essential to the device. They assert that testimony will show that the detonators here can be exploded by any battery, or even powerful radio transmissions, or static electricity. It is asserted that logically, the energy source here is no more essential to the completeness of this device than ammunition is essential to the completeness of a machine gun. Without deciding the factual issue raised by line of argument, a review of the authorities leads the Court to the conclusion that the Act cannot be read as defendants would have us. Chief Judge Timbers in *Davis* in denying a motion therein to dismiss, states:

> "It is true that the common meaning of the term combination is union. The context in which the term "combination" is used in the Act, however, clearly indicates that what Congress meant by the term was an association of the components of a destructive device, at the same time and place, capable of being converted into a destructive device—not an actual union of parts in an assembled device." 313 F.Supp. 714.

This is almost exactly the situation facing us here. The materials here can rather clearly be considered as an "association of the components of a destructive device, . . . capable of being converted into a destructive device." Similarly, Section 5845(f) defines as a destructive device, "any combination of parts either designed or intended for use in converting any device into a destructive device . . . and *from which a destructive device may be readily assembled."* This again is a good description of the materials involved in this case. In short, as Judge Timbers stated in *Davis:* " . . . defendant's argument rests on a narrow construction of the terms of the Act which ignores the context in which they are used." Id.

■ Before turning to the other motion pending in this case, some mention

should be made of the self-incrimination arguments raised by the defendants. It is contended that the non-disclosure provisions of 26 U.S.C. § 5848(a) do not provide immunity, and that under the construction of the Act adopted above, the only persons needing to register under the Act are those intending to use devices covered under the Act unlawfully, thus immediately opening one up to criminal prosecution and foreclosing an exercise of the rights given under the Fifth Amendment. In light of the specific holdings by the Supreme Court in *U. S. v. Freed*, 401 U.S. 601, 606, and n. 11, 91 S.Ct. 1112, 28 L.Ed.2d 356, that this statute satisfied Fifth Amendment requirements, defendants' argument on this issue cannot stand. See also *U. S. v. Valentine*, 427 F.2d 1344 (8th Cir. 1970). Accordingly, for the reasons enumerated above, the motion by the defendants to dismiss is hereby denied.

## II. MOTION TO SUPPRESS EVIDENCE

Defendant Greer has moved to suppress the contents of the package. As mentioned earlier, this defendant was charged only with conspiracy and not with the substantive offense of possession of an unregistered destructive device. Nonetheless defendant Greer argues that under the mailbox rule, he has an inchoate interest in the possession of the material in the box, and that because he is charged with an inchoate possessory crime, conspiracy to possess explosive, he is faced with exactly the dilemma for which the "automatic standing" rule of *Jones v. U. S.*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) was developed.

That case found that in certain situations, the defendant, in order to gain standing to assert his Fourth Amendment rights, would then have to allege such a level of facts that he would then incriminate himself with respect to the possessory crime charged, and thus be forced to forego his Fifth Amendment rights. To solve this dilemma "Automat-

ic standing" is given. Defendant states that that is just his problem. The government, however, correctly points out that the Supreme Court has effectively eliminated the self-incrimination problem in *Jones* type situations. In *Simmons v. U. S.*, 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Court held that the prosecutor could not use at trial any testimony given by a defendant at a pre-trial hearing to establish standing to suppress evidence. Moreover as stated in the recent case of *Brown v. U. S.*, 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973):

In deciding this case, therefore, it is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. The vice of allowing the Government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes, is not present.

Defendant seeks to distinguish this case by asserting that in *Brown*, the conspiracy charged was limited to a date prior to the date of the search but that here the conspiracy is alleged to have continued until interrupted by the interception of the package. The Sixth Circuit considered and dismissed these same arguments in *U. S. v. Hearn*, 496 F.2d 236 (6th Cir. 1974):

"In seeking to distinguish 'Brown they assert that no prior illegal search was there involved, that, unlike the present case, the conspiracy charged was limited to a date prior to the date of the search under attack . . . These distinctions, however, are of no avail. . . . . . All other

attempted distinctions are predicated either upon the assumption that a co-conspirator's claim of constructive possession is sufficient to accord him standing, as invalid assumption and one implicitly rejected in footnote number 4 of the Brown opinion, or upon the assumption that possession at the time of seizure is an essential element of the crime of conspiracy to receive and conceal, an invalid legal deduction."

■ ■  Defendant's standing here is therefore to be measured by the standard of *Brown*, and when this is done it is clear that everyone of the criteria of *Brown* backing a finding of no standing apply with equal force in this case. It is uncontroverted that defendant Greer was not on the premises at the time of the search. Neither does he have any interest in those premises. With respect to defendant's contentions that he has an inchoate possessory interest in the items seized, the Court concludes that he has not shown the direct evidence required for a finding of such an interest. *U. S. v. Dye,* 508 F.2d 1226, 1234 (6th Cir. 1974). In addition, regarding the final element listed in *Brown*, the case law makes it abundantly clear that possession is not an important element in a charge of conspiracy.

"Possession, on the day of seizure or otherwise, is not an essential element of the crime of conspiracy . . . The crime of conspiracy is not the same as the substantive crime which is the objective of the conspiracy. The gist of the crime of conspiracy to receive and conceal is the unlawful agreement . . ., accompanied by one or more acts in furtherance of the unlawful agreement. *United States v. Ketola,* 455 F.2d 83, 85 (9th Cir. 1972)."

See also *Securities and Exchange Comm. v. Coffey,* 493 F.2d 1304 (6th Cir. 1974), *U. S. v. Bostic,* 480 F.2d 965 (6th Cir. 1973); *Poliafico v. U. S.,* 237 F.2d 97 (6th Cir. 1956), cert. den. 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957).

For these reasons, defendant Greer lacks standing to object to the search of the package and the evidence obtained therefrom, and accordingly, his motion to suppress is denied.

It is so ordered.