**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Timothy Jay BLACKWELL, a/k/a Tiny; Lawrence Dean Lenihan, a/k/a Chitlin; Larry William White, Defendants–Appellants. (Two Cases)**

**Nos. 90–5841, 90–5863.**

United States Court of Appeals,
Fourth Circuit.

Argued July 10, 1991.

Decided Oct. 7, 1991.

Georg Nicholas Herman, Steven Alan Bernholz, Coleman, Bernholz, Bernholz, Gledhill, Hargrave & Herman, Chapel Hill, N.C., argued for appellants. (Terry G. Harn, Chapel Hill, N.C., on brief for defendants-appellants Blackwell & White; C. Douglas Fisher, Robert A. Hassell, Fisher & Hassell, Hillsborough, N.C., on brief), for defendant-appellant Lenihan.

Harry L. Hobgood, Asst. U.S. Atty., Greensboro, N.C., argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), for plaintiff-appellee.

Before WILKINSON, WILKINS, and NIEMEYER, Circuit Judges.

## OPINION

WILKINS, Circuit Judge:

Timothy Jay Blackwell, Lawrence Dean Lenihan, and Larry William White, members of the Durham, North Carolina Chapter of the Hell's Angels Motorcycle Club (HAMC), were each convicted of one count of distributing explosives to an unlicensed person "not resid[ing] in the State in which the distributor resides," 18 U.S.C.A. § 842(a)(3)(B) (West 1976), and one count of possessing an unregistered firearm, 26 U.S.C.A. § 5861(d) (West 1989). Defendants principally contend that venue did not properly lie in the Middle District of North Carolina and that the district court gave erroneous instructions to the jury. We disagree and affirm.

### I.

In 1984 Anthony John Tait, a member of the Anchorage Alaska HAMC began supplying information to the Federal Bureau of Investigation concerning the illegal activities of HAMC. Following the murder of an HAMC member in Louisville, Kentucky committed by members of the Outlaw Motorcycle Club, HAMC held meetings to determine which Outlaw club members were responsible and to formulate a plan of

retaliation. Tait was appointed to coordinate the retaliation.

In early 1987 Tait attended an HAMC function in Charleston, South Carolina where he approached defendant Lenihan, president of the Durham, North Carolina chapter of HAMC, and asked him for "tools" such as antitank rockets, automatic weapons, and explosives. Tait advised Lenihan that any explosives supplied would be used to blow up an Outlaw clubhouse. Lenihan told Tait in a tape-recorded conversation that his chapter probably had plastic explosives, grenades, and antitank rockets available to donate. Because these items were hidden, however, Lenihan was uncertain whether they were still available, and directed Tait to speak with the treasurer of the Durham chapter, defendant Blackwell, who would be more knowledgeable.

Tait contacted Blackwell concerning the availability of the materials and advised Blackwell that he intended to use the materials to construct several bombs. Blackwell informed Tait that C–4 plastic explosives and blasting caps were available and that Tait would not be required to pay for the explosives because they were to be used for a "good cause." During a subsequent meeting, Blackwell told Tait that Lenihan was waiting to meet with Tait and that the explosives and caps were ready for delivery. Tait flew to Durham and telephoned Lenihan, who instructed him to meet with defendant White to arrange delivery. The next day, Blackwell and White delivered five pounds of C–4 plastic explosives and eight blasting caps to Tait.

Defendants were indicted in North Carolina district court on one count of distributing explosives and one count of possessing an unregistered firearm. Defendants, and a number of other members of HAMC from around the country, were subsequently indicted in the Western District of Kentucky on charges of conspiring to transport explosives in interstate commerce and to kill members of the Outlaw Motorcycle Club. Defendants moved the North Carolina court to transfer the proceedings to Kentucky on the basis of convenience. *See*

Fed.R.Crim.P. 21(b). The government did not object, and the district court transferred the proceedings to Kentucky.

The Kentucky district court severed the charges against defendants for separate trial. Following the trial of the national president of HAMC and other alleged co-conspirators, the government moved to dismiss the conspiracy charges against defendants and suggested that the Kentucky district court transfer the remaining charges that had comprised the North Carolina indictment back to the North Carolina district court. The district court dismissed the conspiracy charges with prejudice and transferred the proceedings back to North Carolina over defendants' objection.

Following retransfer, defendants moved the North Carolina district court to dismiss the indictment, arguing that further prosecution constituted a violation of the double jeopardy clause of the fifth amendment and that venue in North Carolina was improper. On an appeal from the pretrial rulings of the district court, a panel of this court found no double jeopardy violation and declined to address the venue question. *United States v. Blackwell*, 900 F.2d 742 (4th Cir.1990). The subsequent decision by the Supreme Court in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), prompted defendants to seek reconsideration of the double jeopardy ruling. The district court again found no double jeopardy violation, and this court affirmed on the reasoning of its prior decision, *United States v. Blackwell*, No. 90–5841 (4th Cir. Sept. 17, 1990) (unpublished). Defendants were each convicted on both counts at trial.

## II.

■ Defendants contend that venue did not properly lie in North Carolina. They argue that because Federal Rule of Criminal Procedure 21 authorizes district courts to transfer venue in criminal cases only upon a motion by defendants and because they objected to the transfer, the Kentucky district court lacked authority to transfer the proceedings back to North Carolina. As a result, they claim, the North Carolina

district court was required to dismiss the indictment.

■ This court lacks "jurisdiction to review a decision to transfer venue rendered by a district court in another circuit." *Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1257 (4th Cir.1991). We, therefore, may not review defendants' claim insofar as it seeks a ruling from this court that the Kentucky district court improperly transferred the proceedings back to North Carolina.[1] Moreover, because defendants failed to request a retransfer of the prosecution to Kentucky under Rule 21(b), we may not review whether the proceedings properly should have gone forward there. *See Brock*, 933 F.2d at 1257 (in order to obtain review "party challenging the transfer would have to move for a retransfer of his action and then appeal an adverse ruling"). The sole question before the court, then, is whether the district court below erred in refusing to dismiss the proceedings. We conclude that it did not.

■ Article III of the United States Constitution requires that a criminal trial "be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The sixth amendment provides that a defendant shall have the right to a trial "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Venue was clearly proper in the Middle District of North Carolina because the conduct for which defendants were charged was alleged to have occurred there. Defendants were not prosecuted in a constitutionally improper forum and have shown no prejudice from the trial proceeding in North Carolina. Therefore, we hold that the district court did not err in finding that the prosecution could proceed in North Carolina.[2]

### III.

■ Count one of the indictment charged defendants with violating 18 U.S.C.A. § 842(a)(3)(B). In order to prove a violation of this section the government must show that (1) the defendant, who was not a licensee or permittee, (2) knowingly distributed explosive materials, (3) to someone who was not a licensee or permittee, (4) who the defendant knew or had reasonable cause to believe did not reside in the defendant's state of residence. *Id.* " 'Explosive materials' means explosives, blasting agents, and detonators." 18 U.S.C.A. § 841(c) (West 1976). The government concedes that the evidence presented at trial, while proving that defendants distributed "explosives" and "detonators," i.e., the C–4 plastic explosives and electric blasting caps, did not show that defendants distributed "blasting agents." Defendants argue that because the definition of "explosive materials" under section 841(c) uses the conjunctive "and" instead of the disjunctive "or" the government was required to show, and the district court should have charged the jury, that a defendant must distribute all three types of materials to distribute explosive materials within the meaning of section 842(a)(3)(B).

Statutory construction begins with an examination of the literal language of a statute. " 'If the statutory language is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." ' " *Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (quoting *United*

---

1. While we may not review the decision of the Kentucky district court, we find that, although not authorized under Rule 21 to transfer criminal proceedings absent a request by the defendant, a district court possesses the inherent authority to retransfer proceedings to the original forum when the reasons for the initial Rule 21(b) transfer no longer exist. *Cf. United States v. Mohney*, 476 F.Supp. 421 (D.Haw.1979) (district court opined that it possessed the authority to retransfer but *declined* to exercise it for reasons of judicial economy).

2. Defendants also claim that the government orchestrated the retransfer in order to avoid unfavorable evidentiary rulings by the Kentucky district court and that this constitutes impermissible forum shopping by the government. Finding that this issue has not been properly preserved on appeal, we decline to review it. *United States v. Maxton*, 940 F.2d 103 (4th Cir.1991).

*States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981)). In enacting Title XI of the Organized Crime Control Act of 1970 Congress intended to "establish[ ] Federal controls over the interstate and foreign commerce of explosives" and to "strengthen[ ] the Federal criminal law with respect to the illegal use, transportation or possession of explosives." H.R.Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News. 4007, 4011. Congress specifically expressed its intent to broaden the definition of explosives. *Id.* The term "explosive materials" was intended by Congress "to *include* explosives, blasting agents, and detonators." *Id.* at 4041 (emphasis added).

Congress plainly used the term "explosive materials" in section 842(a)(3)(B), as opposed to the word "explosives" defined in 18 U.S.C.A. § 841(d), to expand the scope of materials for which unlicensed distribution was prohibited. To apply the literal reading propounded by defendants would frustrate congressional intent to provide comprehensive regulation of unlicensed distributors of explosives and would lead to the absurd result, completely at odds with congressional intent, that distribution of extremely dangerous explosives would be permissible absent the simultaneous distribution of three distinct types of explosive devices. Because we find that a literal reading of the statute would contravene clearly expressed legislative intent, we hold that "explosive materials" within the meaning of section 842(a)(3)(B) means explosives, blasting agents, or detonators. Consequently, we find that the charge by the district court so instructing the jury was proper.

### IV.

Defendants also contend that the district court erred in its instructions to the jury concerning the intent required to constitute a violation of 26 U.S.C.A. § 5861(d). The district court charged the jury that defendants violated this section if they possessed components that could readily be assembled into a destructive device intending that they be used "either personally by him or by others in converting any device into a destructive device." Defendants acknowledge that the evidence presented at trial showed that they believed that Tait was going to use the materials to construct a bomb to destroy an Outlaw clubhouse. They argue, however, that because they did not intend to do so themselves, they lacked the intent required by the statute.

When a defendant possesses components that may be readily assembled into a bomb with the intent that the components be used to construct a destructive device, he possesses a firearm within the meaning of section 5861(d). *See* 26 U.S.C.A. § 5845(a)(8), (f)(3) (West 1989). However, the "mere components of commercial explosives, absent proof of intent to use such components as a weapon, fail to qualify as a 'destructive device' within the meaning of 26 U.S.C. § 5845. Intent is a necessary element, absent proof of original design or redesign for use as a weapon." *United States v. Fredman,* 833 F.2d 837, 839 (9th Cir.1987). The issue of whether the intent requirement is satisfied by a showing that the defendants intended a third party to convert the components into a destructive device for use as a weapon appears to be one of first impression.

Defendants principally rely on dicta in *United States v. Morningstar,* 456 F.2d 278 (4th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 135, 34 L.Ed.2d 153 (1972). In *Morningstar,* this court reversed the dismissal of the indictment by the district court, stating that on remand the government would have the burden of showing that the explosive materials "could have been readily assembled into a bomb" and that "Morningstar intended to convert the sticks and caps into a bomb." *Id.* at 281. Defendants contend that this language mandates that they, as opposed to a third party, must have intended to use the materials to construct a bomb. We disagree. The *Morningstar* court addressed the sole issue of whether the possession of commercial explosives that could be readily assembled into a bomb could constitute a violation of section 5861(d) and held that when there

**1054**

was an intent to use the components to construct a bomb for use as a weapon, the possession violated the statute. The language on which defendants base their argument was tailored to the factual situation presented in *Morningstar*, in which there was no allegation that anyone other than Morningstar intended to convert the components into a destructive device. Because the issue presented to this court was not before the court in *Morningstar*, the opinion is not controlling of our disposition of this issue.

We conclude that when an individual possesses components that may readily be assembled into a destructive device and intends that a third party will use the components to construct a destructive device for use as a weapon, the requisite intent is present. Consequently, the district court properly instructed the jury on this issue.

### V.

Although defendants offer no new arguments, they continue to contend that their prosecution violated the double jeopardy clause of the fifth amendment. *See* U.S. Const. amend. V. This court has previously addressed and rejected this claim on two separate occasions. These decisions have become the law of the case, and finding that no injustice will result, we will not reconsider this issue. *Cf. United States v. Luskin*, 926 F.2d 372, 376 (4th Cir.) (court refuses to reconsider ruling decided in prior appeal), *cert. denied*, —— U.S. —— 110 S.Ct. 1807, 108 L.Ed.2d 937 (1991); *Edwards v. Johnston County Health Dep't*, 885 F.2d 1215, 1218–19 n. 10 (4th Cir.1989) (court may reconsider "a prior decision which is clearly erroneous and would result in substantial injustice"). The remaining issues are without merit.

AFFIRMED.