STATE OF NORTH CAROLINA,
et al., Plaintiffs,

v.

CITY OF VIRGINIA BEACH,
VIRGINIA, Defendant.

No. 90–715–CIV–5–BR.

United States District Court,
E.D. North Carolina,
Western Division.

March 28, 1995.

Alan Seth Hirsch, Office of Atty. Gen., N.C. Dept. of Justice, Raleigh, NC, for State of N.C.

Diana E. Ricketts, Bode, Call & Green, Raleigh, NC, for Roanoke River Basin Ass'n.

John Richard Jordan, Jr., Robert R. Price, Jordan, Price, Wall, Gray & Jones, Raleigh, NC, for City of Virginia Beach, VA.

## ORDER

BRITT, District Judge.

Before the court is the motion of defendant City of Virginia Beach, Virginia ("the City") to modify the court's order of 3 March 1992. Plaintiffs and intervenor Federal Energy Regulatory Commission ("FERC") filed responses in opposition to this motion, and the Commonwealth of Virginia filed an *amicus curiae* brief. The City subsequently replied. The issues have been fully briefed, and the matter is now ripe for disposition.

A recitation of the facts is contained in the court's order of 10 December 1990 and in a companion case, *North Carolina v. Hudson,* 731 F.Supp. 1261 (E.D.N.C.1990), and will not be repeated herein. By order of 10 December 1990, this court enjoined the City from engaging in the actual construction of any phase of the Lake Gaston Pipeline Project until further order of the court or approval by FERC of the application by Virginia Electric and Power Company ("VEPCO") for the Non–Project Use of Project Lands and Waters. Pursuant to the judgment of the Fourth Circuit, *North Carolina v. City of Virginia Beach,* 951 F.2d 596 (4th Cir.1991), this court on 3 March 1992 modified that order in two respects which are irrelevant to this matter.

Since the issuance of this order, VEPCO applied to FERC for approval to transfer necessary easements which would permit the City to use water from Lake Gaston. FERC decided to prepare an environmental impact statement ("EIS") and on 20 January 1995, issued a draft EIS recommending the project. The projected date of the issuance of the final EIS is 30 June 1995. In the meantime, the City applied to the Virginia State Corporation Commission ("VSCC") to obtain authorization under state law to condemn the easements. VSCC subsequently granted authorization for the City to proceed with condemnation.

The City moves the court to modify its order to further allow the injunction to expire upon the City's acquisition of the easements needed for construction and operation of its facilities in Lake Gaston by condemnation. The parties' arguments center on whether the Federal Power Act ("FPA") preempts the City's condemnation authority under state law.

## DISCUSSION

The Supreme Court has enunciated several well-established principles for determining whether federal law preempts state law. First, Congress may, within constitutional limitations, preempt state law by expressly stating so. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983). In the absence of express language, preemption may occur where Congress evidences an intent to occupy the regulatory field. *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). "If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state

law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id.* (citations omitted). To determine whether the FPA preempts the City's condemnation authority under state law, an examination of the FPA's legislative history is necessary.

Congress enacted the FPA "to provide federal control over and give federal encouragement to water power development." *First Iowa Hydro–Elec. Co-op. v. Federal Power Comm'n,* 328 U.S. 152, 180 n. 23, 66 S.Ct. 906, 919 n. 23, 90 L.Ed. 1143 (1946). Under the Act, FERC has comprehensive planning responsibilities, including the licensing and regulation of hydroelectric projects in navigable waters. 16 U.S.C. §§ 797, 801, 803. As noted by the Supreme Court, "the FPA establishes a broad and *paramount* federal regulatory role." *California v. FERC,* 495 U.S. 490, 499, 110 S.Ct. 2024, 2030, 109 L.Ed.2d 474 (1990) (emphasis added).

With respect to the division of authority between the states and federal government, legislative history indicates Congress was concerned with preventing "a dual system of futile duplication of two authorities over the same subject matter." *First Iowa,* 328 U.S. at 171, 66 S.Ct. at 915. Out of this concern, Congress preserved the states' interests while at the same ensuring divided authority over any one subject did not occur. *Id.* at 174, 66 S.Ct. at 916. The FPA sections at issue in this case, Sections 14 and 27, are two examples of such provisions, whereby Congress sought to preserve state authority. *Id.* at 174–75 & n. 19, 66 S.Ct. at 916 & n. 19.

Section 14 reserves to a state or a municipality the right to "take over, maintain, and operate any project licensed under this chapter at any time by condemnation proceedings upon payment of just compensation." 16 U.S.C. § 807(a). The FPA defines "project" as a "complete unit of improvement or development, consisting of a powerhouse, all water conduits, all dams and appurtenant structures, ... and all water-rights, rights-of-way, ... lands, or interest in lands the use of which are necessary or appropriate in the maintenance and operation of such unit." *Id.* § 796(11). Section 14 clearly envisions the condemnation of an entire project. *See id.* While the parties are in agreement as to this reading of the statute, the issue remains whether the City may take a project "piecemeal."

Statutory interpretation begins with the plain words of the statute. "If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *United States v. Blackwell,* 946 F.2d 1049, 1052 (4th Cir.1991) (citation omitted). The plain language of Section 14, read in conjunction with the FPA's definition of "project," supports plaintiffs' and FERC's contention that this section authorizes condemnation only of an entire project, not "piecemeal" takings. "Project" is defined in terms of a complete unit development, including water rights and interest in lands. 16 U.S.C. § 796(11). Congress did not evince an intention that any other definition of "project" should apply to the term as it is used in Section 14. *See id.* §§ 796, 807. Further, FPA's definitional section applies without limitation to the entire chapter. *Id.* § 796.

Without any clear evidence of Congressional intent to reserve to a state or municipality the authority to condemn a portion of a project, the court will not read such a reservation into the statute. It is clear Congress intended to reserve to a state or municipality the right to take over, maintain and operate an entire project. Allowing the City to condemn only a portion of the project, rather than take over the entire project, would directly conflict with this Congressional intent. As such, Section 14 preempts Virginia law which provides the City with the authority to condemn the easements. Accordingly, modification of the injunction cannot be sustained on this ground.

As an alternative basis for modification, the City argues Section 27 preserves its condemnation authority from preemption. "Section 27 expressly 'saves' certain state laws relating to property rights as to the use of water, so that these are not superseded by the terms of the [FPA]." *First Iowa,* 328

U.S. at 175, 66 S.Ct. at 917. Section 27 provides:

> Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.

*Id.* § 821.

Even assuming, without deciding, Virginia's laws relating to condemnation are within Section 27, those laws are not saved from supersedure in this instance. The court is unwilling to accept the fact that Congress intended for a municipality to be able to withdraw a significant, if not unlimited, amount of water from a FERC licensed project simply by condemning the necessary easements pursuant to state law. Such an application of Section 27 would fly in the face of FERC's comprehensive planning responsibilities and regulatory authority under the FPA. The City's unilateral acquisition of rights in the project and divestiture of FERC jurisdiction would clearly conflict with the FPA and Congressional intent behind the Act. Thus, Section 27 is not a basis on which the City can assert control over the project, and the court will not modify its order on this ground.

## CONCLUSION

While the court is sympathetic to the City's plight, the reasons enunciated by the City necessitating a decision by 28 April 1995 are not sufficiently broad enough to warrant intervention in FERC's ongoing review. For the foregoing reasons, the City's motion to modify the court's order of 3 March 1992 is DENIED.