**UNITED STATES of America**

**v.**

**Bryan WAS, Norman Was.**

**Crim. No. H–87–79 (PCD).**

United States District Court,
D. Connecticut.

April 25, 1988.

James G. Genco, Asst. U.S. Atty., Hartford, Conn., for U.S.

Charles A. Maglieri, Barall & Maglieri, Bloomfield, Conn., for Bryan N. Was.

F. Mac Buckley, Buckley & Santos, Hartford, Conn., for Norman Was.

RULING ON MOTION TO DISMISS

DORSEY, District Judge.

*Facts*

Defendants, Bryan and Norman Was, were indicted on December 23, 1987, for conspiracy to sell, sale, and possession of firearms in violation of the National Firearms Act ("Act"), 26 U.S.C. §§ 5845(b), 5861(e), 5871, and 18 U.S.C. § 371. Count

One alleges that defendants conspired to transfer firearms, namely three machine gun auto sears, in violation of 26 U.S.C. §§ 5861(e), 5845, 5871 [1] and 18 U.S.C. § 371. Counts Two and Three allege that defendants knowingly transferred, on two separate dates, firearms as defined in 26 U.S.C. § 5845(b), without payment of the transfer tax required by § 5811 and without filing an application for transfer of such weapons with the Secretary of the Treasury as required by § 5812. Count Four charges defendant Bryan Was with the unlawful possession of an unregistered firearm as defined in § 5845(b), namely a Colt AR–15 model SP1.223 fully automatic rifle, in violation of §§ 5861(d) and 5871.

On February 9, 1988, defendants moved to dismiss Counts One, Two and Three pursuant to Fed.R.Crim.P. 12(b)(2). Defendants aver that these charges fail to state an offense for which they may be prosecuted because the sale of an auto sear alone does not constitute the sale or transfer of a "machinegun" as defined in § 5845(b) of the Act. Accordingly, defendants argue that they cannot be prosecuted for the sale or conspiracy to sell a machine gun nor for the failure to file an application for transfer, or pay a transfer tax on a machine gun.

The crux of defendants' argument is that an auto sear is not a "combination of parts designed and intended for use in converting a weapon into a machinegun" as defined in § 5845(b). Defendants also make a due process argument, asserting that § 5845(b) is ambiguous and, therefore, must be constructed in their favor.

*Law*

█ A motion to dismiss an indictment is proper when it may be decided solely upon issues of law. *See, e.g., United States v. Poczik*, 362 F.Supp. 101, 102 (W.D.N.Y.1973); *United States v. Martinez*, 350 F.Supp. 971 (W.D.Pa.1972). The court must dismiss an indictment prior to trial if it fails to allege facts which constitute the proscribed offense. *United States v. Coia*, 719 F.2d 1120 (11th Cir.1983), *reh'g denied*, 724 F.2d 978 (11th Cir.), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed. 2d 822 (1984).

█ When a statute is subject to varying interpretations, "an ambiguity concerning the ambit of a criminal statute should be resolved in favor of lenity." *Huddleston v. United States*, 415 U.S. 814, 831, 94 S.Ct. 1262, 1271–72, 39 L.Ed.2d 782 (1974); *Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). This practice is firmly grounded in the "principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibit-

1. 26 U.S.C. § 5861(e) provides:
   It shall be unlawful for any person—
   ....
   (e) to transfer a firearm in violation of the provisions of this chapter; ....
   26 U.S.C. § 5845, at the time of the alleged offense, provided in part:
   For the purposes of this chapter—
   (a) Firearm. The term "firearm" means ...
   (6) a machinegun; ....
   (b) Machinegun.—The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any combination of parts designed and intended for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

However, effective November 15, 1986, § 5845(b) was amended to provide:
   (b) Machinegun.—The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.
This amendment does not apply to the indictment at issue.
26 U.S.C. § 5871 provides that violations of this section shall be punishable by a maximum fine of $10,000 or maximum term of imprisonment of ten years, or both.

**352**

ed." *Dunn v. United States*, 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979), citing *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972); *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954); *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939); *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 341, 75 L.Ed. 816 (1931). Conduct which is punishable must be plainly and unmistakably proscribed. *United States v. Gradwell*, 243 U.S. 476, 485, 37 S.Ct. 407, 410, 61 L.Ed. 857 (1917). In deciding whether a statute is susceptible to more than one interpretation, the court must necessarily review the meaning of the statutory language and legislative intent. *See, e.g., Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950) (examining text and history of statute); *United States v. Brown*, 333 U.S. 18, 68 S.Ct. 376, 92 L.Ed. 442 (1948) (same). The construction and interpretation of a statute is a judicial function. *See Walt Disney Prod. v. United States*, 327 F.Supp. 189, 191–92 (C.D.Cal.1971).

■ The legislative intent must be distinguished from the facial meaning of a statute in considering whether it is ambiguous. *See Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (1951) (Jackson, J., concurring); *see also* Holmes, *Collected Legal Papers*, 207 (New York 1920) (objective literal meaning of statute is valid alternative to inquiry into legislative intent). The interpretation urged by the government must be supported by common usage, dictionary definition, or court decision to be upheld. *Torti v. United States*, 249 F.2d 623, 625 (7th Cir.1957). If no ambiguity exists, the court may not determine the literal sense of the statute from the legisla-

tive history or circumstances surrounding its enactment. *Id.*

■ Since the construction and interpretation of a statute is a judicial function, when administrative and judicial interpretations conflict, the latter must prevail. *See Barlow v. Collins*, 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970) (where the only or principal dispute relates to the meaning of a statutory term, the controversy presents an issue on which the courts, not the administrators, are more expert). Whether a statute is subject to varying construction, an interpretive ruling is of limited effect. *See Manhattan General Equip. Co. v. Commissioner*, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528 (1936) (interpretive ruling which is out of harmony with the statute is a mere nullity). The correctness of an agency's interpretation is supported when Congress, with full knowledge of the agency's interpretation, has made significant additions to the statute without departing from the agency's view. *Farmers Educ. & Co-op Union v. WDAY, Inc.*, 360 U.S. 525, 533, 79 S.Ct. 1302, 1307, 3 L.Ed.2d 1407 (1959).

*Discussion*

*"Combination of Parts"*

■ At the time of defendants' allegedly illegal act, § 5845(b) of the Act defined "machinegun" to include a "combination of parts designed and intended for use in converting a weapon into a machinegun." [2]

Defendants argue that, in defining a machine gun to include "any combination of parts designed and intended for use in converting a weapon into a machinegun," § 5845(b) is susceptible of two meanings, only one of which would include an auto sear within the definition.[3] Defendants' first construction treats the "designed and

---

2. An auto sear is clearly neither "the frame or receiver" of a machine gun, nor a "combination of parts from which a machinegun can be assembled." *See* § 5845(b) (1968). The clause cited in the text is the only portion of the statutory definition which is advanced by the government to apply to the auto sear at issue in this case. *See* Government's Memorandum at 3, citing Bureau of ATF Ruling 81–4.

3. Even if it were susceptible of two interpretations, the statutory definition is sufficiently precise to give reasonable notice as to what is forbidden. It is, therefore, not unconstitutionally vague. *United States v. Campbell*, 427 F.2d 892, 893 (5th Cir.1970); *see also United States v. Morningstar*, 456 F.2d 278, 281 (4th Cir.1972) (construing § 5845(f)).

intended" language as referring to a combination of "parts," each of which is *itself* "designed and intended for use in converting a weapon into a machinegun;" i.e., more than one machine gun part. The other possible construction interprets the clause to refer to a "combination of parts," which, *as a group*, is "designed and intended for use in converting a weapon into a machinegun;" i.e., a so-called "conversion kit." Defendants argue that, under the first construction, a single auto sear, even if proven to be "designed and intended" for the prohibited use, cannot be a "combination" of such parts and thus cannot be a machine gun.

Defendants' first construction of the statute is unconvincing and unreasonable. This reading would make the words "combination of" in the clause superfluous, since it could be stricken without changing the sense of the meaning. A statute is to be interpreted so as to give effect to every word, clause, and sentence of a statute if possible. *Carey v. Local Board No. 2*, 297 F.Supp. 252 (D.Conn.), *aff'd*, 412 F.2d 71 (2d Cir.1969). The use of the phrase "combination of parts" in the third clause of the sentence also supports the interpretation that the phrase should be read as a whole and that the rest of the clause modifies "combination of parts" and not merely "parts."

Moreover, the legislative history does not support such a reading. The cited language of § 5845(b) was the result of amendments in 1968 in the Gun Control Act of 1968, P.L. 90–618. The House–Senate Conference report on the 1968 Gun Control Act explained:

The present [pre-amendment] National Firearms Act

covers gangster-type weapons such as machineguns,.... Under the amendment it would also cover machine gun frames and receivers, so-called "conversion kits" for turning other weapons into machineguns, and combinations of ma-

chinegun parts when in the possession of a single person.

1968 U.S.Cong. & Adm.News, Vol. 3 at pp. 4410, 4434 (Conference Report No. 1956, Oct. 9, 1968), accompanying P.L. 90–618. This comment makes clear that the three clauses of the second sentence of § 5845(b) are meant to be read disjunctively, so that each clause states an additional and independent definition of a machine gun. *Cf. United States v. Fisk*, 70 U.S. (3 Wall.) 445, 447, 18 L.Ed. 243 (1865) ("and" may be read as "or" when necessary to make statute consistent with legislative purpose); *Detroit Edison Co. v. SEC*, 119 F.2d 730, 738 (6th Cir.) (meaning may be established by words, context, subject matter, effect, and spirit of statute), *cert. denied*, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1941). The third clause concerns machine gun parts when in possession of a single person. The second clause regulates any combination of parts of any kind, where the *combination* is "intended to be used to convert a weapon into a machinegun." *See United States v. Campbell*, 427 F.2d 892, 893 (5th Cir.1970) (conversion kits sold by defendant were "designed and intended for use" in converting M–1 carbine into machine gun), *cert. denied*, 402 U.S. 975, 91 S.Ct. 1673, 29 L.Ed.2d 140 (1971).

Defendant concedes that the AR–15 auto sear is physically made up of more than one part.[4] The auto sear thus cannot be excluded from the ambit of the "combination of parts" portion of the second clause of § 5845(b). However, defendant argues that, even if an auto sear is a "combination of parts," it is not capable of converting a weapon into a machine gun and thus, as a matter of law, is not "designed and intended for use in converting a weapon into a machinegun." The government disputes this claim. In support of its contention that an auto sear is "designed and intended" for the regulated use, the government introduces an interpretive ruling of the Bu-

---

4. The government has taken conflicting positions as to what these parts are to be called. *Compare* AFT Ruling 81–4 (auto sear consists of sear mounting body, sear, return spring, and pivot pin) *with* Government's Memorandum at 1 (listing auto sear housing, auto sear, spring and roll pin). However, the nomenclature is irrelevant to the issue of whether an auto sear is a "combination of parts."

**354**

reau of Alcohol, Tobacco and Firearms ("ATF"). ATF Ruling 81–4 states that the Bureau has examined an auto sear and "finds that the single addition of this auto sear to certain AR 15 type semi automatic rifles, manufactured with M16–internal components already installed, will convert such rifles into machineguns." (Exhibit 9). In addition, the government produces two technical reports from the Firearms Technology Branch of ATF, stating that the auto sears functioned to convert a semiautomatic AR–15 rifle receiver to a machine gun. Exhibits 7, 8. Thus, the government claims that each auto sear, by itself, constitutes a complete "conversion kit," capable of converting an AR–15 rifle to a fully automatic rifle without any additional parts. Government's Memorandum at 2. Whether the auto sears allegedly sold by defendants are in fact "designed and intended for use in converting a weapon into a machinegun" is, therefore, a question for proof at trial and cannot be decided as a matter of law. *See Campbell,* 427 F.2d at 893 (proof at trial showed "conversion kits" were designed and intended for use in converting a standard M–1 carbine into a machine gun); *cf. Ballew v. United States,* 389 F.Supp. 47, 55 (D.Md.1975) (discussing proof that grenades and gunpowder were "designed and intended to be used as destructive devices" in violation of 26 U.S.C. § 5845(f)), *aff'd,* 539 F.2d 705 (4th Cir. 1976).

Accordingly, the motion to dismiss is denied.

SO ORDERED.