UNITED STATES of America, Plaintiff,

v.

Michael MOYER, Defendant.

No. CR88–277A.

United States District Court,
N.D. Ohio, E.D.

Feb. 14, 1989.

John B. Gibbons, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff.

Robert Rotatori and Susan Gragel, Gold, Rotatori, Schwartz & Gibbons, Cleveland, Ohio, for defendant.

ORDER

DOWD, District Judge.

I. INTRODUCTION.

The defendant, Michael Moyer, is charged in a multi-defendant indictment with three counts in violations of 18 U.S.C.

§ 2321. The basic allegations against the defendant are that he did knowingly buy, receive, possess and obtain control of, with the intent to sell or otherwise dispose of, a motor vehicle engine whose vehicle identification number (VIN) had been unlawfully removed, and a two-tone tan Buick door and a Chevrolet Caprice door whose VIN number had been unlawfully removed.

The defendant Moyer has moved the Court for a motion to dismiss the indictment and the government has opposed the motion. For the reasons that appear below, defendant's motion to dismiss the indictment is denied.

## II. BACKGROUND.

The allegations made against Michael Moyer are contained in count one, count three, and count four of the indictment. The indictment alleges:

### COUNT 1

The Grand Jury charges:

On or about January 13, 1987, in the Northern District of Ohio, Eastern Division, MICHAEL W. MOYER, did knowingly buy, receive, possess and obtain control of, with intent to sell and otherwise dispose of a motor vehicle part; to wit: a 1985 or 1986 General Motors V–6 Engine, knowing that the Vehicle Identification Number (VIN) of said motor vehicle part had been unlawfully removed, obliterated, tampered with, and altered; in violation of Title 18, Sections 2321 and 2, United States Code.

. . . . .

### COUNT 3

The Grand Jury charges:

On or about February 26, 1987, in the Northern District of Ohio, Eastern Division, MICHAEL W. MOYER, did knowingly buy, receive, possess and obtain control of, with intent to sell and otherwise dispose of a motor vehicle part; to wit: a two tone tan Buick door, knowing that the Vehicle Identification Number (VIN) of said motor vehicle part had been unlawfully removed, obliterated, tampered with, and altered; in violation of

Title 18, Sections 2321 and 2, United States Code.

### COUNT 4

The Grand Jury charges:

On or about June 9, 1987, in the Northern District of Ohio, Eastern Division, MICHAEL W. MOYER, did knowingly buy, receive, possess and obtain control of, with intent to sell and otherwise dispose of a motor vehicle part; to wit: a Chevrolet Caprice door, knowing that the Vehicle Identification Number (VIN) of said motor vehicle part had been unlawfully removed, obliterated, tampered with, and altered; in violation of Title 18, Sections 2321 and 2, United States Code.

Indictment (docket # 1) pp. 1–2. The indictment was supplemented by a bill of particulars (docket # 14) and an amended bill of particulars (docket # 18).

Title 18, § 2321 provides in full:

§ 2321. *Trafficking in certain motor vehicles or Motor Vehicle Parts*

(a) Whoever buys, receives, possesses, or obtains control of, with intent to sell or otherwise dispose of, a motor vehicle or motor vehicle part, knowing that an identification number for such motor vehicle or part has been removed, obliterated, tampered with, or altered, shall be fined not more than $20,000 or imprisoned not more than ten years, or both.

(b) Subsection (a) does not apply if the removal, obliteration, tampering, or alteration—

(1) is caused by collision or fire; or

(2) is not a violation of section 511 of this title.

(c) As used in this section, the terms "identification number" and "motor vehicle" have the meaning given those terms in section 511 of this title.

18 U.S.C. § 2321.

Title 18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him

or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2. Michael Moyer, therefore, is charged as a principal in count one, count three, and count four of the indictment alleging a violation of Title 18 U.S.C. § 2321.

The defendant's motion to dismiss is twofold. First, the defendant argues that the indictment, taken together with a bill of particulars, fails to state an offense. Second, the defendant argues that the indictment should be dismissed because 18 U.S.C. § 2321 is unconstitutionally vague and overbroad, both on its face and as applied to defendant Moyer.

## III. DISCUSSION.

Before addressing the merits of the defendant's motion, it is important for the Court to define its focus given the procedural nature of this case. This matter was set for trial on the Court's trial calendar for January 19, 1989. The defendant's motion to dismiss the indictment was filed on January 17, 1989. The defendant's motion essentially incorporates the defendant's trial brief as authority for the support of his motion. The motion to dismiss and arguments presented in the briefs have been supplemented by the defendant (docket # 35) and the government (docket # 36).

■ On a motion to dismiss, the Court's role is not that of trier of fact. Rather, factual allegations in the indictment are accepted as true on a motion to dismiss. *United States v. Tana*, 618 F.Supp. 1393, 1395 (S.D.N.Y.1985); *United States v. Chagra*, 638 F.Supp. 1389, 1395–96 (W.D. Tex.1986); *see also, Universal Milk Bottle Serv. v. United States*, 188 F.2d 959, 962–63 (6th Cir.1951).

Accordingly, the Court will limit his focus to the allegations contained in the indictment. Therefore, to the extent parties' trial and supplemental briefs address the sufficiency of the evidence or the expected form of the evidence, the Court will not consider such arguments. Against that backdrop, the Court will now turn to a consideration of the merits of the defendant's motion to dismiss.

### A. *Failure to State an Offense.*

■ The defendant's primary argument in support of his claim that the indictment fails to state an offense is that the indictment fails to allege that the vehicle parts identified in the indictment were from model year vehicles subject to the anti-theft provisions of the Motor Vehicle Theft Law Enforcement Act of 1984. The defendant argues, in support of this claim, that the legislative history of the Motor Vehicle Theft Law Enforcement Act of 1984 provides a clear indication that Congress intended to curb the problem of stolen vehicles, and the subsequent resale of certain parts for certain high theft vehicles. The defendant argues that the charges of the government are deficient because they have not alleged that the vehicles or models are covered by the provisions in the 1984 Act.

The defendant focuses on that part of the legislative history which provides, in pertinent part,

[t]he Motor Vehicle Theft Law Enforcement Act of 1984 seeks to address the chop shop problem by numbering certain parts of high theft vehicles, thereby helping law enforcement officials trace those parts.

H.R.Rep. No. 98–1087, 1984 U.S.Code Cong. & Admin.News 4628, 4631. The defendant underscores the words "certain parts of high theft vehicles." The defendant, in further support of his claim, focuses on that part of the act which provides for the Secretary of Transportation to issue anti-theft regulations for certain automobile models. The defendant argues that because the identification of the "certain parts of high theft vehicles" was not complete until 1987, then only identifiable parts from 1987, as promulgated by the Secretary of Transportation, are within the criminal prohibitions imposed by 18 U.S.C. § 2321.

In support of the defendant's motion, the defendant's first point of reliance is upon the legislative history of the Motor Vehicle

Theft Law Enforcement Act of 1984. However, the Court finds that that initial reliance upon the legislative history is not automatically warranted.

The Court must first look to the plain language of the statute itself when the meaning of a statute is at issue. *Bradley v. Austin*, 841 F.2d 1288, 1293 (6th Cir. 1988) (citing *McBarron v. S & T Indus., Inc.*, 771 F.2d 94, 97 (6th Cir.1985)). "If ... the statutory language is unambiguous, then that language is regarded as conclusive unless there is a clearly expressed legislative intent to the contrary." *Id.* (citing *United States v. Premises Known as 8584 Old Brownsville Road, Shelby County, Tennessee*, 736 F.2d 1129, 1130 (6th Cir.1984)). When the language of the statute is ambiguous, then it is permissible for the Court to examine the legislative history. *Id.; see also United States v. Was*, 684 F.Supp. 350 (D.Conn.1988) ("[i]f no ambiguity exists, the court may not determine the literal sense of the statute from the legislative history of circumstances surrounding its enactment." 684 F.Supp. at 352 (citing *Torti v. United States*, 249 F.2d 623, 625 (7th Cir.1957))).

An examination of the statute itself, lends no support for the defendant's posi-tion. The statute does not differentiate between model years of motor vehicles or motor vehicle parts. The statute clearly states

> [w]hoever buys, receives, possesses, or obtains control of, with the intent to sell or otherwise dispose of, a motor vehicle or *a motor vehicle part*, knowing that identification for such *motor vehicle or part* has been removed, or obliterated, tampered with, or altered, shall be fined not more than $20,000 or imprisoned not more than ten years, or both.

(emphasis added). There are no words of limitations coupled with the terms "motor vehicle or motor vehicle part." Consequently, the Court finds that such language is not ambiguous on its face. Moreover, the Court finds that that language in the statute is conclusive because there is no "clearly expressed legislative intent to the contrary."

A review of the Motor Vehicle Theft Law Enforcement Act of 1984 itself and the legislative history of the Act, reflects that the Act has two primary components.[1] On the one hand, the Act is designed to impose criminal penalties on those persons who engage in the trafficking of stolen motor

---

1. As a matter of background, it is clear that the legislature was concerned with "chop shop" operations and the exporting of stolen vehicles. The report on the Motor Vehicle Theft Law Enforcement Act of 1984 reflects the concern Congress had for chop shop operations:

> Professional thieves often steal automobiles in order to "chop" them up into component parts and then sell the parts. The decreasing rate of vehicle recovery would appear to indicate that "chop shops" are playing an increasingly large role in vehicle theft. Currently the chopping of vehicles into their component parts and the subsequent fencing of those parts is ... done with minimal risk and yields high profits. It thus has become very lucrative to organized theft rings. Vehicle engines and transmissions, some of which now bear identifying markings, are often junked by criminals rather than risk criminal liability for possession of traceable components. Parts without identification numbers such as hoods, doors, fenders and others are fenced to salvage and repair shops. A likelihood of apprehension and prosecution of these thieves is extremely slim, in large part, because parts cannot be traced back to the original stolen vehicle.

• • • • •

The Motor Vehicle Theft Law Enforcement Act of 1984 seeks to address the chop shop problem by numbering certain parts of high theft vehicles, thereby helping law enforcement officials trace those parts. The numbering of such parts, along with the enforcement provisions of the bill and increased priority for such enforcement, particularly at the State and local level, will make theft more risky— parts will be traceable and recoverable, aiding law enforcement officials in tracking and prosecuting thieves and theft rings.

Additionally, the legislation enacts criminal penalties for altering vehicle identification numbers (VIN's) and for processing, trafficking, importing or exporting stolen vehicles or parts to compliment this effort.

H.R.Rep. No. 98–1087, 1984 U.S.Code Cong. & Admin.News at 4630–31. The House Report also reflects Congress' concern with the exportation of stolen vehicles and their component parts. The report states that "[t]his legislation establishes penalties for exporting or importing stolen vehicles or parts with altered identification numbers and subjects such parts to forfeiture and seizure." *Id.* at 4631.

vehicles and the subsequent resale of their major parts. *See,* 18 U.S.C. §§ 1961 et seq., 2311 et seq., 2320, 2321; 18 U.S.C. §§ 511, 512, 513, 553; 19 U.S.C. § 1627. On the other hand, the Act is designed to limit the regulation imposed upon the manufacturing industry while facilitating the identification of major component parts of certain automobiles. *See,* 15 U.S.C. §§ 2021–2034.

> The Motor Vehicle Theft Law Enforcement Act of 1984, is a comprehensive package of proposals designed to curb the theft of motor vehicles by preventing thefts and decreasing the ease with which certain stolen vehicles and their major parts can be fenced, while trying to minimize regulation of the domestic and foreign motor vehicle manufacturing industry, including the after market motor vehicle industry.

H.R.Rep. No. 98–1087, 1984 U.S.Code Cong. & Admin.News 4628.

The defendants focus on that part of the legislative history, and that part of the Motor Vehicle Theft Law Enforcement Act of 1984, which deals with the identification of certain motor vehicle parts which in turn is related to that part of the act which speaks to the regulation of the motor vehicle manufacturing industry.

It is clear that the Motor Vehicle Theft Law Enforcement Act of 1984 does in fact identify certain high risk vehicles, and implements a process which helps the manufacturing industry identify those vehicles. The regulation of the domestic and foreign motor vehicle manufacturing industry is codified in Title 15 U.S.C. § 2021, *et seq.* Sections 2021 through 2051 provide a comprehensive legislative process for the regulation of the domestic and foreign manufactures in identifying automobiles and certain high theft vehicle lines and parts. However, that part of the Act is not aimed at the criminal component of the Act, but rather the identification process imposed upon the manufacturing industry. *See* 15 U.S.C. § 2023.

The legislative history of that part of the Act which provides for the criminal prosecution of those who deal in stolen motor vehicles and component parts contains no similar regulatory framework establishing model years specifically.

Accordingly, the Court finds that the defendant's reliance upon the discussion within the Motor Vehicle Theft Law Enforcement Act of 1984 regarding model years does not express a clear intention of Congress not to prosecute, under Title 18 U.S.C. § 2321, persons who traffic in parts manufactured only after the model years 1987. The Act is simply an attempt by Congress to strike a balance between developing a sufficient and accurate method of tracing component parts while avoiding the imposition of high costs on the foreign and domestic automobile manufacturers. Moreover, it is clear that that part of the legislative history and the Act which focuses on the process by which manufacturers mark or affix identification numbers to component parts is designed to regulate the costs imposed on the industry and does not diminish to the crime prevention element.

■ The defendant's second principal argument in support of his motion is that the government has failed to allege that the identification labels from motor vehicles manufactured after the model year of 1987 were illegally removed. The defendant argues that prior to 1987 identification numbers, placed on various parts of an automobile, were for purposes other than that of criminal prosecution. The defendant argues that the criminal penalties for the removal of identification numbers was imposed only after the effective date of the Motor Vehicle Theft Law Enforcement Act of 1984 and the phase-in period for the identification numbers on certain high-theft vehicles. Consequently, because the indictment fails to allege that vehicle identification numbers removed by the defendant were from motor vehicles manufactured after the 1987 model year, the indictment fails to state an offense.

The government, on the other hand, claims that the vehicle identification numbers affixed to motor vehicles prior to the increased identification procedures identified in the Act are used for the purposes of

tracing criminal activity and there is no such limitation that only identification numbers fixed after 1987 are within the criminal penalties of the Act.

The defendant again relies, in the first instance, on the legislative history of the Motor Vehicle Theft Law Enforcement Act of 1984 for support. However, as the Court indicated earlier, the first point of inquiry is an examination of the language in the statute itself.

Subsection (c) of 18 U.S.C. § 2321 states, "[a]s used in this section, the terms 'identification number' and 'motor vehicle' have the meaning given those terms in section 511 of this title." Subsection (c)(1) of 18 U.S.C. § 511 defines vehicle identification number as "a number or symbol that is inscribed or affixed for the purposes of identification under the National Traffic and Motor Vehicle Safety Act of 1966, or the Motor Vehicle Information and Cost Savings Act." 18 U.S.C. § 511(c)(1). The term "vehicle identification number" is defined, for purposes of the National Traffic and Motor Vehicle Safety Act of 1966 and the Motor Vehicle Information and Cost Savings Act of 1972, as "[a] series of arabic numbers and roman letters which is assigned to a motor vehicle for identification purposes." 49 Code of Federal Regulations, § 511.115.

An examination of the language in the statute and the relevant definitions in the related statutes reveals no ambiguity. The language is clear and has been defined from as far back as 1966.

Furthermore, the Court finds that the legislative history reflects no clear indication otherwise. For the same reasons as explained by the Court earlier, the defendant's reliance on that part of the Act which deals with the identification of certain motor vehicle parts and motor vehicles for certain model years is related to that part of the Act which is regulatory in nature. Further, the regulatory provisions do not narrow the scope of the criminal provisions. Accordingly, the Court finds that the defendant's argument regarding the removal of identification numbers for only certain model years to be not well taken.

■ The defendant's third claim in support of his motion to dismiss the indictment for failure to state an offense, is that the indictment fails to allege that the defendant does not come within any of the exceptions identified in 18 U.S.C. § 2321(b) and 18 U.S.C. § 511(b). The defendant argues that the indictment must negate the application of the exceptions contained within this statute and absent such allegations, the indictment must be dismissed.

The government does not directly address this issue in either its trial brief or its response brief to defendant's supplemental brief.

In *McKelvey v. United States*, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301 (1922), the Supreme Court stated that

an indictment ... founded on a general provision to finding the elements of an offense, ..., need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it.

260 U.S. at 357, 43 S.Ct. at 134 (citations omitted). Generally, an indictment is sufficient if it alleges the facts and elements of the offense to the extent that it informs the one charged of the offense so that the charged party can prepare a defense and protect the right to assert the jeopardy clause in a subsequent charge for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974). There have been few cases, however, that that have held that the exceptions contained within the enumerated offense are inseparable from the enunciated rule and that the failure to negate the exception renders the indictment insufficient. *See, e.g., United States v. Bel–Mar Laboratories, Inc.*, 284 F.Supp. 875, 885 n. 23 (E.D.N.Y.1968) and the cases cited therein. The best example of such a situation is provided in *Sutton v. United States*, 157 F.2d 661 (5th Cir.1946).

In *Sutton*, the alleged offense, in pertinent part, alleged that "no person shall

possess a rationed commodity except in accordance with the provisions of a rationed order." *Sutton,* 157 F.2d at 665. In *Sutton,* the Fifth Circuit Court of Appeals recognized that as a general rule an indictment need not allege the negative of an exception to the offense citing *McKelvey v. United States.* However, the court in *Sutton,* found that the proviso was such that it was inseparable from the offense enumerated in the statute. The indictment, therefore, did not sufficiently describe the charge against the defendant without the allegation of the negative. 157 F.2d at 666.

The defendant relies on *Sutton,* and other case law, for support for his claim that in this case on the exceptions to § 2321 are an integral part of the alleged criminal conduct and without an allegation negating the exceptions the indictment must fail.

The Court disagrees. The Court finds that the indictment sufficiently informs the defendant of the alleged conduct for which he is charged. In *Akers v. United States,* 280 F.2d 198 (6th Cir.), *cert. denied* 364 U.S. 924, 81 S.Ct. 289, 5 L.Ed.2d 262 (1960), the Sixth Circuit declined to accept a similar argument on the basis that if the indictment sufficiently charged an offense there was no need to negate the exceptions. 280 F.2d at 199. The Court stated

> [t]he indictment charges an offense punishable under the laws of the United States. It sufficiently apprises the defendant of the charges he must be prepared to meet and in case other proceedings are taken against him for a similar offense, to what extent he may plead a former conviction.... The contention that the term "securities" is indefinite because of certain exclusions in the statute is without validity upon the rule that if the indictment sufficiently charged an offense, it need no negate exceptions. *McKelvey v. United States,* 260 U.S. 353, 357, 43 S.Ct. 132 [134], 67 L.Ed. 301.

*Akers,* 280 F.2d at 199 (citation omitted). In this case, the language in the indictment sufficiently apprises the defendant of the conduct for which he is charged. The indictment tracks the language contained in subsection (a) of § 2321 of Title 18. Conse-

quently, the defendant is on notice for the crime for which he is charged and therefore can adequately prepare a defense and assert the charge on the subsequent pleading against him. This case is distinguishable from cases such as *Sutton,* in that the exception is not so inseparable from the charged offense that it fails to inform the defendant of the charge made against him.

**B. Constitutional Attack on Section 2321.**

■ The defendant claims that 18 U.S.C. § 2321 is unconstitutionally vague and overbroad on its face and it is applied to the defendant in this case. The defendant argues that a criminal statute, in order to comply with the constitution, must provide a reasonable person with adequate notice of the conduct which is prohibited and be structured in such a way that it does not encourage arbitrary and discriminatory enforcement. The defendant argues that 18 U.S.C. § 2321 is deficient in both these respects.

First, the defendant argues that Congress itself recognized that certain persons not engaged in the operation of chop shops could be prosecuted under the statute and left the decision whether to prosecute such persons to the discretion of the prosecutor. The defendant argues that Congress' recognition of the defect and its attempt to cure the defect through through prosecutorial discretion is impermissible and constitutionally deficient. Second, the defendant argues that the statute is overbroad and vague because the language "whoever" can encompass those persons who were not intended to be held criminally responsible and who are not, in fact, engaged in illegal conduct. For example, the defendant asserts that government agencies, insurance companies, and automobile salvagers who obtain, in a legal manner, and come into possession of motor vehicle parts not identified could be subject to the criminal penalties of § 2321. Accordingly, the defendant argues that the statute is overbroad and vague.

The government agrees that the constitution requires that a statute provide an ordinary citizen with actual notice and guard

against arbitrary enforcement. The government argues that § 2321 provides actual notice of the conduct that is prohibited and is not designed for the arbitrary and discriminatory enforcement. The crux of the government's argument is that the statute "has established notice to reasonable men as what conduct will be criminal and also defines for law enforcement officers, what conduct will constitute a violation." Government's Response to Defendant's Supplemental Brief in Support of Motion to Dismiss Indictment at p. 12.

The Court finds that the defendant's claim that 18 U.S.C. § 2321 is unconstitutionally vague and overbroad is not well taken. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). Moreover, "the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" 461 U.S. at 358, 103 S.Ct. at 1858 (citing *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)).

Section 2321 clearly defines the conduct that is prohibited in concise language. Furthermore, the defendant does not advance a serious attack on whether the language of the statute is insufficient to apprise an ordinary person of what conduct is prohibited. Rather, the defendant's primary attack is on the second element, i.e., arbitrary and discriminatory enforcement.

In support, the defendant focuses on the language within legislative history which states that "[i]t is intended that law enforcement officials use their prosecutorial discretion in regard to such persons and use care not to prosecute persons who are not engaged directly or indirectly in chop shop operations." H.Rep. No. 98–1087, 1984 U.S.Code Cong. & Admin.News at 4650. That language is contained within the discussion of § 511(b)(2). Section 511(b)(2) is codified at 18 U.S.C. § 511 and provides for an exception to the criminal conduct contained in subsection (a) of Section 511, i.e., the knowing removal of identification numbers. The defendant fails to acknowledge the legislative history to the extent that it provides "[t]he Committee understands that the sponsors intend that Section 511(b) create a limited exception to the provisions of subsection (a) to protect innocent business people and their employees from prosecution." H.Rep. No. 98–1087, 1984 U.S.Code Cong. & Admin.News, at 4650. When read in its entirety, the legislative history makes clear that the statute was not designed for the arbitrary and discriminatory enforcement. Rather, the language demonstrates Congress's intent to provide for exceptions to the criminal statute in cases where conduct was not prohibited and is not in fact alleged to be criminal. Consequently, the Court finds that the defendant's reliance on the extracted quotation does not provide a sufficient basis for the determination that the statute is susceptible to arbitrary and discriminatory enforcement on its face.

The defendant also makes a claim that the statute, § 2321, is void for vagueness and overbroad as applied to the defendant. The Court declines to accept such an argument. The defendant has offered no set of facts that as applied to him which would establish that the statute is vague or overbroad. Consequently, that claim is summarily dismissed by the Court.

### IV. CONCLUSION.

For the reasons that appear above, the defendant's motion to dismiss the indictment (docket # 33) is denied.

IT IS SO ORDERED.