**UNITED STATES of America**

v.

**Charles R. SCHWAB, et al.**

**Crim. No. H–89–20 (PCD).**

United States District Court,
D. Connecticut.

April 27, 1989.

James G. Genco, Asst. U.S. Atty., Hartford, Conn., for plaintiff.

M. Hatcher Norris, Glastonbury, Conn., for defendant Charles R. Schwab.

RULING ON DEFENDANT SCHWAB'S
MOTION TO DISMISS COUNT TWO

DORSEY, District Judge.

Defendant Charles R. Schwab was indicted for conspiracy to make a destructive device, 18 U.S.C. § 371, 26 U.S.C. §§ 5845(a)(8), (f) and 5861(f); and unlawful transfer of a firearm, 18 U.S.C. §§ 922(a)(5), (d)(1), and 924(a)(1)(D). Count Two of the indictment alleges that defendant, a resident of Massachusetts, knowingly transferred and delivered a firearm to defendant Ronald West in the District of Connecticut, knowing and having reasonable cause to believe that West resided in Connecticut. 18 U.S.C. § 922(a)(5)[1] and § 924(a)(1)(D).[2] Defendant contends that Congress did not intend to criminalize the transfer of a firearm from a resident of one state to a resident of another, where the transfer takes place in the transferee's state of residence. As Count Two alleges a transfer in Connecticut, where West resided, defendant argues that Count Two does not charge a violation of § 922(a)(5). He also argues an ambiguity in the statute requiring construction in his favor under

---

1. Section 922(a)(5) provides:

    (a) It shall be unlawful—

    . . . .

    (5) for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) who the transferor knows or has reasonable cause to believe resides in any State other than that in which the transferor resides (or other than that in which its place of business is located if the transferor is a corporation or other business entity); except that this paragraph shall not apply to (A) the transfer, transportation, or delivery of a firearm made to carry out a bequest of a firearm to, or an acquisition by intestate succession of

a firearm by, a person who is permitted to acquire or possess a firearm under the laws of the State of his residence, and (B) the loan or rental of a firearm to any person for temporary use for lawful sporting purposes;

It is not contended that either of the exceptions apply to this case.

2. Section 924(a)(1)(D) provides:

    (a)(1) Except as otherwise provided in paragraph (2) or (3) of this subsection, subsection (b), (c), or (f) of this section, or in section 929, whoever—

    . . . .

    (D) willfully violates any other provision of this chapter, shall be fined not more than $5,000, imprisoned not more than five years, or both, and shall become eligible for parole as the Parole Commission shall determine.

the rule of lenity. *See Huddleston v. United States*, 415 U.S. 814, 831, 94 S.Ct. 1262, 1271–72, 39 L.Ed.2d 782 (1974); *cf. United States v. Kraase*, 484 F.2d 549, 552 (7th Cir.1973) (applying rule of lenity to § 922(a)(5)).

The conduct alleged in Count Two is prohibited by the plain language of § 922(a)(5) and there is no ambiguity as to such a prohibition.[3] The statute prohibits the transfer or delivery of a firearm by an unlicensed person to any unlicensed person whom the transferor has reason to know resides, and does so reside, in a state different from the transferor's own. § 922(a)(5); *see United States v. Kraase*, 484 F.2d 549 (7th Cir.1973) (government must prove transferee in fact resided in different state); *United States v. Plyman*, 551 F.2d 965 (5th Cir.1977) (same). The language of § 922(a)(5) contains no reference or limitation with respect to where such a transfer or delivery takes place. Thus, the unlawfulness of the conduct does not turn on the state in which the transfer or delivery occurs, but on the states of residence of the participants in the transaction. Otherwise a prohibited transfer could readily be legalized by carrying it out in the transferee's state. Such a construction is inconsistent with the language of the statute and contrary to its obvious purpose of inhibiting interstate movement of weapons.

Defendant's resort to the legislative history of § 922(a)(5) cannot create an ambiguity where none exists on the face of the statute. Initially the plain meaning of the statute is considered in determining whether it is ambiguous. Only if there is at least a suggestion of ambiguity may the legislative intent be explored. *See Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395, 71 S.Ct. 745, 751, 95 L.Ed. 1035 (1951) (Jackson, J., concurring). If no ambiguity exists, the court may not determine

the literal sense of the statute from the legislative history or circumstances surrounding its enactment. *Schwegmann Bros.*, 341 U.S. at 395–96, 71 S.Ct. at 751; *see Metropolitan Transp. Auth. v. FERC*, 796 F.2d 584, 591 (2d Cir.1986) (statute to be read according to its literal terms unless that interpretation makes little sense, does violence to legislative purpose, or is at odds with drafters' intent), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1286, 94 L.Ed.2d 144 (1987); *United States v. Was*, 684 F.Supp. 350, 352 (D.Conn.1988), *aff'd*, 869 F.2d 34 (2d Cir.1989) (per curiam).

*Kraase* does not authorize inquiry beyond the face of the statute, as defendant contends. The issue there was whether § 922(a)(5) requires proof that the recipient of a firearm is in fact a resident of a state other than the defendant's. Although a literal reading of the statute requires only "reasonable cause to believe," the court held that the fact must be proved as well as the belief. 484 F.2d 549, 551. However, the court departed from the literal meaning only because that meaning " 'dramatically intruded upon traditional state criminal jurisdiction.' " *Id.*, quoting *United States v. Bass*, 404 U.S. 336, 350, 92 S.Ct. 515, 524, 30 L.Ed.2d 488 (1971). Thus, the court reviewed the legislative history of § 922 and, finding no support for "such an unusual reach of federal authority," concluded that Congress could not have intended the literal result. *Kraase*, 484 F.2d at 551–52. *Accord Plyman*, 551 F.2d at 966, n. 3. In contrast to *Kraase*, application of § 922(a)(5) to the conduct alleged in Count Two does not implicate federalism concerns.[4] A firearms transaction between residents of different states is presumptively a matter which Congress may regulate, regardless of where that transaction occurs.

Even were the court to consider the legislative history of § 922(a)(5), that history

---

3. Even were the statute susceptible of two interpretations, the language is sufficiently precise to give reasonable notice of what is forbidden. Thus, it cannot seriously be challenged as unconstitutionally vague. *See United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954).

4. Defendant does not challenge the federal jurisdictional basis for § 922(a)(5), only the interpretation of the statute as applying to the conduct alleged in Count Two.

does not support defendant's position. Section 922 originated as Section 902 of the Omnibus Crime Control and Safe Streets Act of 1968, P.L. 90–351, and was amended shortly thereafter by the Gun Control Act of 1968, P.L. 90–618. A major purpose of § 922(a)(5) was to regulate practices whereby persons traveled across state lines to obtain guns in states with less restrictive laws. *See, e.g.,* Senate Report No. 1097, Omnibus Crime Control and Safe Streets Act of 1968, 1968 U.S.Code & Admin. News 2112, 2164–65, 2167. However, there is simply no corresponding evidence that Congress intended to *limit* § 922(a)(5) to that situation or to exclude from its coverage transactions completed within the transferee's home state by defendant. The only distinction of this case is that the weapon was carried into Connecticut and transferred here to the transferee. The principal purposes of the 1968 gun control legislation were "to strengthen federal controls over interstate and foreign commerce in firearms and to assist the states effectively to regulate firearms traffic within their borders." House Report No. 1577, Gun Control Act of 1968, 1968 U.S.Code & Admin.News 4410, 4411. The plain meaning of § 922(a)(5) is consistent with both these purposes. As the government points out, to prohibit firearm transactions between residents of different states, only when they occur outside the state of the transferee, would cause the prohibition to be easily avoided. In addition, a federal prohibition on transfers between citizens of different states may have a deterrent effect on interstate transportation of firearms while assisting state and local police in their efforts to control transient, out-of-state suppliers.

For the reasons stated above, the plain language of § 922(a)(5) does prohibit the conduct alleged in Count Two. This interpretation is not "'demonstrably at odds with the intentions of [the statute's] drafters.'" *Metropolitan Transp. Auth.,* 796 F.2d at 591, quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

Accordingly, defendant's motion to dismiss Count Two is denied.

SO ORDERED.